1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM & WATKINS LLP
Andrew M. Gass (Bar No. 259694)
 andrew.gass@lw.com
Ivana Dukanovic (Bar No. 312937)
 ivana.dukanovic@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone:  +1.415.391.0600

Sarang V. Damle (admitted *pro hac vice*)
 sy.damle@lw.com
Sara E. Sampoli (Bar No. 344505)
 sara.sampoli@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone:  +1.202.637.2200

Allison L. Stillman (admitted *pro hac vice*)
 alli.stillman@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone:  +1.212.906.1200

*Attorneys for Defendants Tencent America, LLC, Proxima Beta U.S. LLC, and Tencent Holdings Ltd.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SONY INTERACTIVE ENTERTAINMENT LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> TENCENT HOLDINGS LTD., a Cayman Islands corporation; TENCENT TECHNOLOGY (SHANGHAI) COMPANY LTD. d/b/a AURORA STUDIOS and/or POLARIS QUEST, a Chinese company; TENCENT AMERICA LLC, a Delaware limited liability company; PROXIMA BETA PTE LTD. d/b/a TENCENT GAMES and/or LEVEL INFINITE, a Singapore corporation; PROXIMA BETA U.S. LLC, a Delaware limited liability company; and DOES 1-10, <br><br> Defendants. | Case No. 3:25-cv-06275-JCS <br><br> **TENCENT AMERICA LLC'S, PROXIMA BETA U.S. LLC'S, AND TENCENT HOLDINGS LTD.'S MOTION TO DISMISS COMPLAINT FOR COPYRIGHT AND TRADEMARK INFRINGEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Hearing:      November 19, 2025 <br> Time:          9:30 a.m. <br> Location:    Courtroom D, 15th Floor <br> Judge:        Hon. Joseph C. Spero |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on November 19, 2025 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the North District of California, San Francisco Division, Courtroom D, 15th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Tencent America LLC ("Tencent America"), Proxima Beta U.S. LLC ("Proxima Beta U.S.") (together with Tencent America, the "U.S. Defendants") and Tencent Holdings Ltd. ("Tencent Holdings") (collectively, the "Served Defendants"), through their undersigned counsel, will and hereby do, move to dismiss Plaintiff Sony Interactive Entertainment, LLC's ("SEI" or "Sony") Complaint ("Complaint" or "Compl.") (Dkt. 1) pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1), 12(b)(2), and 12(b)(6).

Because this Court lacks specific personal jurisdiction over Tencent Holdings, Tencent Holdings should be dismissed from this action at the outset. Sony also fails to allege facts sufficient to state a claim against either Tencent Holdings or the U.S. Defendants for copyright infringement in violation of 17 U.S.C. § 106 (Claim 1), false designation of origin in violation of 15 U.S.C. § 1125(A) (Claim 2), or trademark infringement in violation of California common law (Claim 3). Sony does not allege any specific conduct by these three Defendants giving rise to liability. Instead, it alleges conduct by "Tencent" or "Defendants" generally. Sony's undifferentiated, vague allegations are insufficient to state any of the claims Sony lodges against the Served Defendants. Moreover, Sony's Complaint fails to identify with specificity the trademark that allegedly was infringed or to plead facts establishing the use of the mark in commerce. Finally, because Sony's claims against the Served Defendants are based almost entirely on speculation regarding future conduct, they are not ripe for adjudication.

The Defendants' motion to dismiss (the "Motion") is based on this Notice of Motion; the supporting Memorandum of Points and Authorities; the Declaration of Ivana Dukanovic, and exhibits attached thereto, filed concurrently herewith; the Declaration of Fengxia Liang filed concurrently herewith; the accompanying Request for Judicial Notice; the complete files and records in this action; and any additional materials and arguments as may be considered in connection with the hearing on the Motion.

## ISSUES TO BE DECIDED

This Motion presents the following issues to be decided: (1) Whether this Court lacks specific jurisdiction over Tencent Holdings, requiring dismissal pursuant to FRCP 12(b)(2); (2) Whether the Court should dismiss Sony's claims against the Served Defendants for failure to state any claim upon which relief can be granted, requiring dismissal pursuant to FRCP 12(b)(6); and (3) Whether the Court lacks subject matter jurisdiction to adjudicate Sony's claims against the Served Defendants because those claims are premised on speculation regarding future acts of potential infringement and therefore are unripe, requiring dismissal pursuant to FRCP 12(b)(1).

Dated: September 17, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Sarang V. Damle*
Sarang V. Damle (admitted *pro hac vice*)
  *sy.damle@lw.com*
Sara E. Sampoli (Bar No. 344505)
  *sara.sampoli@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone:  +1.202.637.2200

Andrew M. Gass (Bar No. 259694)
  a*ndrew.gass@lw.com*
Ivana Dukanovic (Bar No. 312937)
  *ivana.dukanovic@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone:  +1.415.391.0600

Allison L. Stillman (admitted *pro hac vice*)
  *alli.stillman@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone:  +1.212.906.1200

*Attorneys for Defendants Tencent America, LLC, Proxima Beta U.S. LLC, and Tencent Holdings Ltd.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................... 3

    A.    Plaintiff Sony and *Horizon Zero Dawn* ....................................... 3

    B.    *Light of Motiram* Is an Unreleased Game Developed and Marketed by Foreign Entities Other than the Served Defendants........................... 4

    C.    Sony's Lawsuit.............................................................................. 5

III.  ARGUMENT ............................................................................................ 7

    A.    This Court Lacks Personal Jurisdiction Over Tencent Holdings......................... 8

        1.    Prong One: Sony Fails to Allege that Tencent Holdings Purposefully Directed Any Infringing Activity Towards the Forum. ....................................................................... 9

            a.    The March 2024 San Francisco Meeting...................................... 9

            b.    The conclusory allegation that Tencent Holdings "intentionally planned, authorized, and facilitated infringing acts that have or will take place in California".................................................................. 11

            c.    The *Light of Motiram* Trademark Application and Sony's Remaining Allegations ...................................... 12

        2.    Prong Two: Sony's Claims Do Not Arise Out of Any "Forum-Related Activities" by Tencent Holdings.................................. 14

            a.    Sony's Copyright Infringement Claim........................................ 14

            b.    Sony's False Designation of Origin Claim ................................. 15

            c.    Sony's California Common Law Trademark Infringement Claim..................................................... 16

        3.    Prong Three: Exercising Personal Jurisdiction Over Tencent Holdings Is Not Reasonable.................................................... 16

    B.    Sony Fails to State a Claim Against Tencent Holdings, Tencent America, or Proxima Beta U.S. for Copyright or Trademark Infringement........................ 19

        1.    Sony Fails to Allege Any Conduct by Tencent America, Proxima Beta U.S., or Tencent Holdings to Support Its Claims. .............................................. 20

            a.    Copyright Infringement (Claim 1).............................................. 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

b.   False Designation (Claim 2), Trademark Infringement (Claim 3) ...................................... 24

2.   Sony Also Fails To Adequately Plead Essential Elements of Its False Designation and Common Law Trademark Infringement Claims. ............................................ 25

C.   Sony's Claims Are Not Ripe for Adjudication. .................................. 30

IV.   CONCLUSION .................................................................. 33

# TABLE OF AUTHORITIES

## CASES

*Abitron Austria GmbH v. Hetronic Int'l, Inc.,*
   600 U.S. 412 (2023).................................................................. 18

*Allergan, Inc. v. Merz Pharmaceuticals, LLC,*
   2011 WL 13323227 (C.D. Cal. Aug. 1, 2011)................................. 11

*Arroyo v. CPLG Props. L.L.C.,*
   2021 WL 4260604 (C.D. Cal. June 3, 2021) ................................... 6

*Asashi Metal Indus. Co. v. Superior Ct. of California,*
   480 U.S. 102 (1987).................................................................. 17

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................. 19

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
   874 F.3d 1064 (9th Cir. 2017) .................................................. 9, 14

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
   223 F.3d 1082 (9th Cir. 2000) .................................................... 8

*Beijing Meishe Network Tech. Co., Ltd. v. TikTok Inc.,*
   2024 WL 1772833 (N.D. Cal. Apr. 23, 2024) ................................ 21

*Better Homes Realty, Inc. v. Watmore,*
   2017 WL 1400065 (S.D. Cal. Apr. 18, 2017) ................................. 25

*Brooks v. Y.Y.G.M. SA,*
   2021 WL 5450232 (E.D. Cal. Nov. 22, 2021) ................................ 10

*Burri Law PA v. Skurla,*
   35 F.4th 1207 (9th Cir. 2022) .................................................... 8

*BuzzBallz, L.L.C. v. BuzzBox Beverages, Inc.,*
   2016 WL 7496769 (C.D. Cal. Apr. 12, 2016) ................................ 30

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
   598 F.3d 1115 (9th Cir. 2010).................................................... 31

*ChemRisk, LLC v. Chappel,*
   2011 WL 1807436 (N.D. Cal. May 12, 2011) ................................ 17

*Coach, Inc. v. Celco Custom Servs. Co.,*
   2012 WL 12883972 (C.D. Cal. Oct. 31, 2012)................................ 25

*Corwin v. Swanson*,
   2010 WL 11598013 (C.D. Cal. Apr. 27, 2010) ................................................................ 18

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ..................................................................................... 22

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
   61 F.3d 696 (9th Cir. 1995) ......................................................................................... 18

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...................................................................................................... 13

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ....................................................................................... 19

*Dfinity Found. v. Meta Platforms, Inc.*,
   2022 WL 16857036 (N.D. Cal. Nov. 10, 2022) ........................................................... 29

*Dole Food Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ................................................................................. 9, 17

*Eclectic Prop. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ....................................................................................... 19

*Edison v. United States*,
   822 F.3d 510 (9th Cir. 2016) ....................................................................................... 31

*Epstein v. Wash. Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996) ....................................................................................... 23

*Est. of Daher v. LSH Co.*,
   661 F. Supp. 3d 981 (C.D. Cal. 2023) ......................................................................... 10

*Facebook, Inc. v. Pedersen*,
   868 F. Supp. 2d 953 (N.D. Cal. 2012) ........................................................................... 9

*Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*,
   828 F.2d 1439 (9th Cir. 1987) ..................................................................................... 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)...................................................................................................... 21

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)...................................................................................................... 14

*Fumoto Giken Co. v. Mistuoka*,
   2015 WL 12766167 (C.D. Cal. Apr. 16, 2015) ........................................................... 13

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ............................................................................ 20

*Gelasio v. Zafar*,
   2024 WL 4634058 (N.D. Cal. Oct. 30, 2024) ........................................................................ 17

*Gen-Probe, Inc. v. Amoco Corp.*,
   926 F. Supp. 948 (S.D. Cal. 1996) ......................................................................................... 20

*Golden State Water Co. v. 3M*,
   2021 WL 221787 (C.D. Cal. Jan. 20, 2021) .......................................................................... 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ................................................................................................................. 8

*Heiting v. Marriott Int'l, Inc.*,
   743 F. Supp. 3d 1163 (C.D. Cal. 2024) ........................................................................... 11, 13

*In re iPhone Application Litig.*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ................................................................. 20, 21

*In Re Stallard*,
   2023 WL 5607600 (TTAB 2023) ............................................................................................ 30

*Instasol, LLC v. EM Digit. Ltd.*,
   2018 WL 3831292 (W.D. Wash. Aug. 13, 2018) ................................................................... 18

*JUUL Labs, Inc. v. Chou*,
   557 F. Supp. 3d 1041 (C.D. Cal. 2021) ................................................................................. 24

*Kelly v. Univ. Press of Mississippi*,
   2016 WL 4445986 (C.D. Cal. Aug. 16, 2016) ........................................................................ 31

*Ketab Corp. v. Mesriani & Assocs., P.C.*,
   734 F. App'x 401 (9th Cir. 2018) .......................................................................................... 26

*King.com Ltd. v. 6 Waves LLC*,
   2014 WL 1340574 (N.D. Cal. Mar. 31, 2014) ........................................................................ 18

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) .................................................................................................. 19

*Lee v. Plex, Inc.*,
   773 F. Supp. 3d 755 (N.D. Cal. 2025) .............................................................................. 10, 13

*LegalForce RAPC Worldwide, P.C v. LegalForce, Inc.*,
   2023 WL 6930330 (N.D. Cal. Oct. 19, 2023) ......................................................................... 31

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ................................................................................................ 31

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
   22 F.4th 852 (9th Cir. 2022) ................................................................................................... 10

*Long v. Authentic Athletix LLC*,
  2016 WL 6024591 (N.D. Cal. Oct. 14, 2016) ........................................................ 19

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................... 30

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ........................................................................... 9, 10

*McCarthy v. Johannesson*,
  2012 WL 12887540 (C.D. Cal. Dec. 11, 2012) ..................................................... 22

*Microsoft Corp. v. AT & T Corp.*,
  550 U.S. 437 (2007) ............................................................................................... 18

*MMAS Rsch. LLC v. Charite*,
  2022 WL 17218074 (C.D. Cal. Nov. 4, 2022) ....................................................... 23

*N. Star Innovations, Inc. v. Toshiba Corp.*,
  2016 WL 7107230 (D. Del. Dec. 6, 2016) ............................................................. 23

*Om Recs., LLC v. OM Developpement, SAS*,
  2024 WL 3049449 (N.D. Cal. June 17, 2024) ..................................................... 9, 13

*Pangaea, Inc. v. Flying Burrito LLC*,
  647 F.3d 741 (8th Cir. 2011) ................................................................................. 11

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ............................................................................... 14

*Rippey v. Smith*,
  1999 WL 1012316 (N.D. Cal. Oct. 28, 1999) ........................................................ 19

*Russo v. Fed. Med. Servs., Inc.*,
  744 F. Supp. 3d 914 (N.D. Cal. 2024) ................................................................... 20

*S. Pac. Transp. Co. v. City of Los Angeles*,
  922 F.2d 498 (9th Cir. 1990) ................................................................................. 31

*Sarieddine v. Connected Int'l Inc.*,
  2025 WL 1768104 (E.D. Cal. June 26, 2025) ........................................................ 25

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................... 9, 16

*Sebastian Brown Prods., LLC v. Muzooka, Inc.*,
  143 F. Supp. 3d 1026 (N.D. Cal. 2015) ................................................................. 24

*Silverman v. CBS Inc.*,
  632 F. Supp. 1344 (S.D.N.Y. 1986) ....................................................................... 32

*Sinatra v. Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) ........................................................................ 17

*Soc. Techs. LLC v. Apple Inc.*,
   4 F.4th 811 (9th Cir. 2021) ........................................................................... 29

*Soelect, Inc. v. Hyundai Motor Co.*,
   2024 WL 4293911 (N.D. Cal. Sept. 24, 2024) ....................................... 13, 14

*Sony Pictures Ent., Inc. v. Fireworks Ent. Grp., Inc.*,
   137 F. Supp. 2d 1177 (C.D. Cal. 2001), *vacated pursuant to settlement*, 2002
   WL 32387901 (C.D. Cal. Nov. 5, 2002) ....................................................... 28

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...................................................................... 19

*Stewart v. West*,
   2013 WL 12120232 (C.D. Cal. Sept. 6, 2013) .............................................. 20

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
   24 F.3d 1088 (9th Cir. 1994) ........................................................................ 18

*Superama Corp. v. Tokyo Broadcasting Sys. Television, Inc.*,
   830 F. App'x 821 (9th Cir. 2020) ................................................................. 23

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ........................................................................ 12

*Synopsys, Inc. v. ATopTech, Inc.*,
   2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ............................................... 20

*Texas v. United States*,
   523 U.S. 296 (1998) ...................................................................................... 31

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
   445 F.Supp.3d 139 (N.D. Cal. 2020) ........................................................ 1, 28

*Tradin Organics USA LLC v. Terra Nostra Organics, LLC*,
   2024 WL 4312215 (N.D. Cal. Sept. 26, 2024) ............................................. 14

*Vuori v. Grasshopper Cap. LLC*,
   2018 WL 1014633 (N.D. Cal. Feb. 22, 2018) ................................................. 8

*W. Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) ........................................................................ 31

*Washington v. ViacomCBS, Inc.*,
   2020 WL 5823568 (C.D. Cal. Aug. 20, 2020) .............................................. 32

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ................................................................................. 13

*Yamashita v. LG Chem, Ltd.*,
   62 F.4th 496 (9th Cir. 2023) ................................................................................... 14

*YellowCake, Inc. v. DashGo, Inc.*,
   2022 WL 172934 (E.D. Cal. Jan. 19, 2022) ........................................................... 22

*Young v. Actions Semiconductor Co.*,
   386 F. App'x 623 (9th Cir. 2010) ........................................................................... 18

*Yu v. Design Learned, Inc.*,
   2016 WL 1621704 (N.D. Cal. Apr. 22, 2016) ....................................................... 24

**STATUTES**

15 U.S.C. § 1125 ............................................................................................................ 25

15 U.S.C. § 1125(A) .............................................................................................. 1, 15, 18

15 U.S.C. § 1125(a)(1)(A) .............................................................................................. 24

17 U.S.C. § 106 ................................................................................................... 1, 22, 23

Cal. Civ. Proc. Code § 410.10 .......................................................................................... 8

**RULES**

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 2, 3, 31

Fed. R. Civ. P. 12(b)(2) ....................................................................................... 2, 3, 10

Fed. R. Civ. P. 12(b)(6) ................................................................................ 2, 3, 19, 31

Fed. R. Civ. P. 4(k)(2) ............................................................................................ 8, 9, 13

Fed. R. Civ. P. 8 .................................................................................................... 20, 22

Fed. R. Civ. P. 8(a)(2) .................................................................................................... 20

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article III, § 2 .............................................................................................. 30

**OTHER AUTHORITIES**

*Silhouette*, Oxford English Dictionary,
   https://www.oed.com/dictionary/silhouette_n (last visited Sept. 10, 2025) ........................... 28

# I.    INTRODUCTION

Plaintiff Sony has sued a grab-bag of Tencent companies—and ten unnamed defendants—about the unreleased video game *Light of Motiram*, alleging that the game copies elements from Sony's game *Horizon Zero Dawn* and its spinoffs.  At bottom, Sony's effort is not aimed at fighting off piracy, plagiarism, or any genuine threat to intellectual property.  It is an improper attempt to fence off a well-trodden corner of popular culture and declare it Sony's exclusive domain.  In Sony's telling, *Horizon Zero Dawn* is "like no fictional world created before [or] since." Compl. ¶ 50 (Dkt. 1).  That claim is startling, because it is flatly contradicted by Sony's own developers, not to mention the long history of video games featuring the same elements that Sony seeks to monopolize through this lawsuit.

Long before this lawsuit was filed, the developers of *Horizon Zero Dawn* publicly acknowledged that the very same game elements that, today, Sony claims to own exclusively, were in fact borrowed from an earlier game.  In a behind-the-scenes documentary, the art director for *Horizon Zero Dawn*, Jan-Bart Van Beek, explained that the game's core conceit—an intrepid, red-haired woman navigating the ruins of a shattered civilization overrun by robotic beasts—had already been executed by a different video game studio in the 2013 title *Enslaved: Odyssey to the West*.[1]  Mr. Van Beek warned, "I don't think we should do this; it touches too much of these other points," referring to prominent elements of *Enslaved*.[2]  Sony shelved the project—only to revive it later with full awareness that the idea was far from novel.  When *Horizon Zero Dawn* finally launched in 2017, the gaming community noted its striking resemblance to *Enslaved* and other genre staples.  *See*, *e.g.*, Exs. 1–3 (users making comparisons to *Enslaved*, *Far Cry: Primal*, and *Rise of the Tomb Raider*, among others).[3]

---

[1] NoClip, *The Making of Horizon Zero Dawn*, YouTube (Dec. 19, 2017), https://www.youtube.com/watch?v=h9tLcD1r-6w&t=859s [https://perma.cc/ST9S-CHBX]. Guerrilla Games appears to be one of the "subsidiary game development studios" that "comprise [Sony's] PlayStation Studios division."  Compl.  ¶ 14; *see id.* ¶ 70 (referring to "Guerrilla Games and the Horizon franchise").

[2] NoClip, *supra* n. 1, at 14:23–15:33.

[3] Exhibits cited "Ex." are attached to the Declaration of Ivana Dukanovic ("Atty. Decl."), dated September 17, 2025, and filed herewith.  The Court may take judicial notice of webpages and their contents.  *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F.Supp.3d 139, 146 (N.D. Cal. 2020) ("In general, websites and their contents may be judicially noticed.") (citing cases).

Sony's Complaint tellingly ignores these facts.  Instead, it tries to transform ubiquitous genre ingredients into proprietary assets.  By suing over an unreleased project that merely employs the same time-honored tropes embraced by scores of other games released both before and after *Horizon*—like *Enslaved*, *The Legend of Zelda: Breath of the Wild*, *Far Cry: Primal, Far Cry: New Dawn*, *Outer Wilds*, *Biomutant*, and many more—Sony seeks an impermissible monopoly on genre conventions.

But even setting aside this foundational defect in Sony's legal position, Sony's complaint has myriad other threshold flaws that require dismissal of the claims against the three movants here—Tencent Holdings Limited and its U.S. subsidiaries Tencent America LLC and Proxima Beta U.S. LLC (together the "Served Defendants").

*First*, Sony fails to allege any facts regarding conduct by Tencent Holdings that would justify exercising personal jurisdiction over it, a foreign company incorporated in the Cayman Islands and headquartered in China.  Indeed, Tencent Holdings appears to have been added merely because it is the parent company of the entities alleged to be the developer and marketer of *Light of Motiram*—both foreign entities that have not yet been served in this case.  That failure alone is sufficient grounds for dismissing all claims against Tencent Holdings.

*Second*, Sony also fails to state a claim for which relief may be granted against *any* of the three Served Defendants.  Notably, Sony fails to allege specific conduct by Tencent America, Proxima Beta U.S., *or* Tencent Holdings giving rise to liability for copyright infringement, false designation, or trademark infringement.  Instead, Sony's threadbare, conclusory allegations improperly lump these Defendants together with the foreign companies alleged to be responsible for the core conduct at issue.  Sony's vague allegations against "Tencent" or "Defendants" generally cannot substantiate the claims it brings against Tencent America, Proxima Beta U.S., or Tencent Holdings specifically.  And even if Sony had stated claims against either one of the U.S. Defendants or against Tencent Holdings specifically (which it has not), Sony's claims for false designation and trademark infringement under California common law would still be fatally flawed because they fail to plausibly allege a protectable trademark used in commerce.

*Finally*, as already evidenced by Sony's vague pleading, each of the claims against the

1  Served Defendants amount to nothing more than speculation regarding potential future conduct

2  related to *Light of Motiram's* forthcoming release and, thus, are not ripe for adjudication in any

3  event. Sony's claims against the Served Defendants focus on an in-development video game with

4  a release date two years away. The alleged infringements have not occurred and may in fact never

5  occur. Accordingly, this Court lacks subject matter jurisdiction to adjudicate the claims Sony

6  brings against the Served Defendants, and they should be dismissed on that basis as well.

7      In short, Sony's claims against the Served Defendants—all of which have no involvement

8  in the conduct central to this dispute—should be dismissed pursuant to Federal Rules of Civil

9  Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

10  **II.    FACTUAL BACKGROUND[4]**

11      **A.    Plaintiff Sony and *Horizon Zero Dawn***

12      Sony Interactive Entertainment LLC ("SIE" or "Sony") is a California-based video game

13  and digital entertainment company that produces video games via subsidiary game development

14  studios. Compl. ¶ 14. In 2017, Sony released *Horizon Zero Dawn*, a live-action, open-world,

15  third-person perspective role-playing video game set in a "post-apocalyptic world where tribal

16  societies live in the shadow of massive robotic animals." *Id.* ¶¶ 2, 44. As alleged, the game's

17  storyline follows the "last remnants of humanity living in culturally distinct, technologically

18  primitive tribes" that co-exist with robotic, animal-like "Machines." *Id.* ¶¶ 51, 53, 106. The

19  game's protagonist is a young, red-haired huntress named Aloy. *Id.* ¶¶ 3, 48, 55. The story unfolds

20  as players advance through the game's questlines and explore the ruins of a lost, high-tech human

21  civilization amid the natural world. *Id.* ¶¶ 59, 82–83. *Horizon Zero Dawn* was the first in a series

22  of related games, including *Horizon Forbidden West, Horizon Call of the Mountain,* and *LEGO*

23  *Horizon Adventures* (together, the "*Horizon* Franchise"), in which different versions of the

24  character Aloy appear. *Id.* ¶¶ 2, 44–46, 61.

25      Sony alleges the audiovisual works comprising the *Horizon* Franchise are registered for

26

27

28  _____

[4] The Served Defendants offer certain facts as alleged in the Complaint for the purpose of this motion only, but do not accept any facts alleged as true and reserve their rights to deny any alleged facts should this matter proceed past this motion to dismiss (which it should not).

copyright protection with the U.S. Copyright Office.[5]  *Id.* ¶ 47.  Sony alleges it is the exclusive

licensee of these rights in the United States.  *Id.* ¶¶ 16, 47.  Sony further claims that it owns

common-law trademark rights to the Aloy character, which functions as the "source-identifying

brand" for the *Horizon* Franchise, as well as for "SIE and Sony PlayStation."  *Id.* ¶¶ 4, 48, 112–

119, 136.

### B.  *Light of Motiram* Is an Unreleased Game Developed and Marketed by Foreign Entities Other than the Served Defendants

None of the Served Defendants develop and market the *Light of Motiram* video game that

Sony alleges infringes its intellectual property in the *Horizon* franchise.  Rather, it is Defendant

Proxima Beta PTE Ltd. ("Proxima Beta Singapore"), a Singapore-based company doing business

as "Tencent Games" and/or "Level Infinite," that is alleged to be the publisher of pre-release *Light*

*of Motiram* promotional materials.  Compl. ¶¶ 27–30.  And it is Defendant Tencent Technology

(Shanghai) Co. Limited ("Tencent Shanghai"), a video game studio based in Shanghai, China and

doing business under the names "Aurora Studios" and/or "Polaris Quest," that is alleged to be the

"developer of *Light of Motiram*."  *Id.* ¶¶ 20–22, 73.

As for the Served Defendants, Tencent Holdings is merely a holding company,

incorporated in the Cayman Islands and headquartered in Shenzhen, China.  Decl. of Fengxia

Liang ("Liang Decl.") at ¶¶ 2–3.  Tencent America, a Delaware limited liability company

headquartered in Palo Alto, California, is alleged to be "the United States arm of Tencent

Holdings," Compl. ¶ 23, and Proxima Beta U.S., also a Delaware limited liability company

headquartered in Palo Alto, California, is alleged to employ personnel who are alleged to work for

"Tencent's global gaming brand," *id.* ¶¶ 31–32.  Rather than assert specific factual allegations

against any of the Served Defendants, Sony alleges vaguely that Tencent America "is currently

involved and/or will be involved in marketing, promoting, organizing, preparing, and/or operating

the forthcoming beta test and release of *Light of Motiram* that will be accessible in the United

---

[5] Sony alleges the U.S. Copyright Office has issued Certificates of Registration for the following works at issue: Horizon Zero Dawn on PS4 (U.S. Reg. No. PA0002516411, filed on 01/29/2025 and registered on 02/10/2025); Horizon Forbidden West on PS4 (U.S. Reg. No. PA0002392809, filed on 10/26/2022 and registered on 10/31/2022) and PS5 (U.S. Reg. No. PA0002391316, filed on 10/26/2022 and registered on 10/31/2022).  *Id.* ¶ 47.

States," *id.* ¶ 25, that Proxima Beta U.S. "will assist in the publication and/or distribution of *Light of Motiram*," *id.* ¶ 32, and that Tencent Holdings "intends to publish and distribute, or to license or otherwise authorize the publishing and distribution of, the game *Light of Motiram* in the United States," *id.* ¶ 18. Otherwise, Sony largely refers to the five named defendant companies collectively as "Defendants" or "Tencent" and claims that they all are infringing on Sony's intellectual property in its "Horizon" video game franchise through development and marketing of *Light of Motiram*. *See id.* ¶¶ 72–81.

### C. Sony's Lawsuit

Although *Light of Motiram* is unreleased (and is not scheduled for release until the end of 2027), Sony filed this action on July 25, 2025. Dkt. 1. The U.S. Defendants were served on July 28, 2025. Dkts. 8–9. Tencent Holdings Ltd. was served on August 15, 2025. Dkt. 40. Tencent Shanghai and Proxima Beta Singapore have yet to be served.

The Complaint alleges that "Tencent"—it does not specify which Defendant specifically—began developing *Light of Motiram*, an open-world video game featuring survival and crafting elements, "sometime in 2023." Compl. ¶ 5. Sony then alleges that in March of 2024, "Tencent" executives approached Sony at a gaming conference in San Francisco regarding potential collaboration between the companies, including on a new *Horizon* mobile game. *Id.* ¶¶ 5, 65, 68.[6] According to Sony, the proposed mobile game would have "maintain[ed] *Horizon's* original open world setting" but "introduce[d] Eastern aesthetics," as well as incorporated gameplay elements from other genres, "such as survival and crafting, pet taming, multiplayer game modes, etc." *Id.* ¶ 68 (alterations in original adopted). In April of 2024, Sony declined the offer to collaborate. *Id.* ¶¶ 5, 70.

Several months later, in late 2024, the forthcoming release of *Light of Motiram* was announced. *Id.* ¶ 71. Sony alleges that promotional materials posted on a Steam page for *Light of Motiram* from December 1, 2024—which have since been removed—resembled *Horizon Zero*

---

[6] Sony alleges that executives from Tencent Holdings, Tencent America, and Aurora Studios participated in the March 2024 pitch. *See* Compl. ¶¶ 19, 22, 24, 65. But Sony is wrong: no one from Tencent Holdings was present at the March 2024 meeting. Liang Decl. at ¶ 6.

*Dawn's* promotional material.[7]  *Id.* ¶ 6.  Sony further claims that "an official video trailer, several promotional screenshots, and . . . gameplay footage" posted on the Steam page "misappropriated protectable elements of [Sony's] copyrights in the *Horizon* Franchise."  *Id.* ¶ 7; *see also id.* ¶¶ 71–73.  Those early promotional materials cited in the Complaint describe the game as one in which players "survive in the wilderness" and "[m]ake smart use of everything around [them] to stay alive and face off against formidable bosses" in "[an] unforgiving land."  *See* Ex. 4 (cited at Compl. ¶ 7 n.2).[8]

Without identifying a specific entity responsible for the alleged misappropriation or where the alleged game production is occurring, Sony alleges that "***Tencent*** has continued to release further promotional materials," that "***Tencent*** has acted without authorization or license from" Sony, that "***Tencent***" is "produc[ing] a game that makes unauthorized use of SIE's rights in the *Horizon* franchise intellectual property," and that "***Tencent*** misappropriates . . . the franchise's overall tone and feel, setting, narrative, characters, and visual expression."  *Id.* ¶¶ 76–79 (emphases added).  Sony further alleges, "[o]n information and belief," that "*Light of Motiram* is the result of the development project that ***Tencent*** previously pitched to SIE for licensing, which SIE rejected."  *Id.* ¶ 75 (emphasis added).

Sony also alleges that promotional materials for *Light of Motiram* have included images of a young, red-haired tribal huntress resembling the Aloy character from the *Horizon* games.  *Id.* ¶¶ 98, 138.  It claims that social media accounts associated with *Light of Motiram* have featured "headshots of [a] red-haired main character" with "bead-and-leather trimmings, tribal face paint, headgear made from machine animal parts, and a blue-glowing earpiece."  *Id.* ¶¶ 11, 121, 138.  Sony admits that "Tencent's original promotional images . . . have been replaced" by images of a

---

[7] Sony's Complaint includes a number of screenshots alleged to be promotional materials and still images of the *Light of Motiram* game, but Sony does not identify the source or date of these images.  *See* Compl. ¶ 76 (alleging generally that "Tencent has continued to release further promotional materials, images, and videos of purported gameplay footage of the *Light of Motiram* game (collectively, with the original promotional materials available on Steam, the '*Light of Motiram* Promotional Material.')"); *id.* ¶¶ 89, 93, 95, 98, 109, 111 (including unattributed screenshots of purported "Promotional Material").

[8] The Court also "may take judicial notice of documents referenced in the complaint and central to a party's claims" for purposes of a motion to dismiss.  *Arroyo v. CPLG Props. L.L.C.*, 2021 WL 4260604, at *1 (C.D. Cal. June 3, 2021).

1    modified figure,[9] but nonetheless contends that subsequent promotional materials for *Light of*

2    *Motiram* (which Sony does not include in its Complaint) remain "confusingly similar" to the

3    purported Aloy trademark.  *Id.* ¶ 123.

4         Sony claims that the game is "forthcoming," *see id.* ¶¶ 71–72," and that it brings this action

5    "to prevent the imminent release of *Light of Motiram*," *id.* ¶ 1.  It further alleges, "[o]n information

6    and belief," that "Tencent intends to make a beta version of the game available for testing by

7    American users *imminently*, and to release *Light of Motiram* in the United States soon thereafter,"

8    *id.* ¶ 74 (emphasis added).  However, the current Steam page for the game states that *Light of*

9    *Motiram* is not scheduled to be released until Q4 2027, more than two years after the date of the

10   Complaint, and Sony alleges no facts to suggest any "beta testing" will occur in the U.S. at all—

11   much less imminently.  *See* Ex. 4 (cited at Compl. ¶ 7 n.2).



## III.    ARGUMENT

23        Sony appears to allege that two foreign companies—Tencent Shanghai and Proxima Beta

24   Singapore—are the ones actually responsible for the development and promotion of the still-in-

25   development *Light of Motiram* game.  Compl. ¶¶ 21–22, 30, 73.  Opting for a scattershot approach,

26   however, Sony also brings suit against three additional entities—parent company Tencent

27

---

28   [9] Sony includes no images of this "modified" figure in the Complaint and does not explain how the modified character is similar to the alleged Aloy character mark.

Holdings and two U.S. entities (Tencent America and Proxima Beta U.S.)—that Sony fails to allege have any non-speculative connection to the *Light of Motiram* game, much less involvement in the supposed copyright and trademark infringement that is the subject of the Complaint. As a foreign company that has not directed any infringing activities at the forum, Tencent Holdings should be dismissed from this suit because this Court lacks specific personal jurisdiction over it. Additionally, Sony's claims against all three Served Defendants should be dismissed because they are both not adequately pled and are unripe for adjudication.

### A.    This Court Lacks Personal Jurisdiction Over Tencent Holdings

Sony does not allege that the Court has general jurisdiction over Tencent Holdings. *See* Compl. ¶ 36; *see Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (setting forth that personal jurisdiction may be either general or specific). Accordingly, "the sole jurisdictional injury for this [c]ourt is whether there is specific jurisdiction." *Vuori v. Grasshopper Cap. LLC*, 2018 WL 1014633, at *11 (N.D. Cal. Feb. 22, 2018); *see also Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 n.4 (9th Cir. 2022) (declining to address general jurisdiction where the plaintiff "does not contend that the [d]efendants are subject to general personal jurisdiction"). Unlike general jurisdiction, specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Vuori*, 2018 WL 101433, at *11 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). There is no specific jurisdiction over Tencent Holdings.

This Court may only exercise specific personal jurisdiction over Tencent Holdings if all three of the following prongs are satisfied: (1) Tencent Holdings either "purposefully direct[ed] [its] activities towards the forum or purposefully avail[ed] [it]self of the privileges of conducting activities in the forum;" (2) Sony's claims "arise[] out of or relates to [Tencent Holdings'] forum-related activities;" and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice, i.e., it must be reasonable."[10] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064,

---

[10] This test applies regardless of whether Sony contends that personal jurisdiction is authorized under California's long-arm statute, Cal. Civ. Proc. Code § 410.10, or Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) permits federal courts to exercise personal jurisdiction over a foreign defendant if the plaintiff's claim "arise[s] under federal law," if the defendant is not "subject to personal

1068 (9th Cir. 2017) (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (internal

quotation marks omitted)).  Sony bears the burden on the first two prongs, and, in the event Sony

meets that burden, Tencent Holdings bears the burden on the final prong.  *Schwarzenegger v. Fred*

*Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  None of the three prongs are met here.

### 1. Prong One: Sony Fails to Allege that Tencent Holdings Purposefully Directed Any Infringing Activity Towards the Forum.

Because copyright and trademark infringement are both "tort-like cause[s] of action," the

"purposeful direction" or "effects test" applies.  *Mavrix Photo, Inc.*, 647 F.3d at 1228 (copyright);

*Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953, 958 (N.D. Cal. 2012) (trademark).  Under the

"effects test," Sony must establish that Tencent Holdings "(1) committed an intentional act, (2)

expressly aimed at the forum state, (3) causing harm that [Tencent Holdings] knows is likely to be

suffered in the forum state."  *Mavrix Photo, Inc.*, 647 F.3d at 1228; *see also Axiom Foods, Inc.*,

874 F.3d at 1069.  None of the allegations against Tencent Holdings contained in the Complaint

are sufficient to establish that Tencent Holdings expressly aimed any infringing activity towards

California (or the United States) that caused Sony harm.  Sony thus fails to meet its burden on the

first prong.

#### a. The March 2024 San Francisco Meeting

Sony contends that Tencent Holdings "knowingly availed itself of the forum in conducting

both in-person and electronic meetings in San Francisco concerning the subject matter of this

dispute." Compl. ¶ 36.  This contention relies entirely on a March 2024 meeting where "Tencent

executives pitched a project to SIE," *id.* ¶ 65; *see id.* ("In March, 2024, several individuals who

represented themselves to be Tencent Holdings, Tencent America and Aurora Studios executives

---

jurisdiction of any state court of general jurisdiction," and if "the federal court's exercise of
personal jurisdiction . . . comport[s] with due process."  *Axiom Foods, Inc.*, 874 F.3d at 1072.
California's long-arm statute "is coextensive with federal due process requirements," *Mavrix*
*Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011), and the due process analysis
under Rule 4(k)(2) is "nearly identical to traditional personal jurisdiction analysis" except that
"rather than considering contacts between [the defendant] and the forum state, [the court]
consider[s] contacts with the nation as a whole."  *Axiom Foods, Inc.*, 874 F.3d at 1072.   Federal
long-arm jurisdiction under Rule 4(k)(2) is "disfavored," however, and Sony "faces a high bar to
demonstrate minimum contacts with the nation as a whole."    *Om Recs., LLC v. OM*
*Developpement, SAS*, 2024 WL 3049449, at *10 (N.D. Cal. June 17, 2024) (internal quotation
marks omitted).

1   approached SIE executives at the annual Game Developers Conference in San Francisco."); *id.*

2   ¶ 19 ("Tencent Holdings' executives approached Sony in person in San Francisco to seek a license

3   for *Light of Motiram*").  But no Tencent Holdings executives or employees were at this meeting.

4   *See* Liang Decl. ¶ 6.  Without the presence of any Tencent Holdings employee at this single

5   meeting in San Francisco, the meeting provides no basis for asserting that Tencent Holdings

6   engaged in an "an intentional act . . . expressly aimed at the forum[.]"  *See Brooks v. Y.Y.G.M. SA*,

7   2021 WL 5450232, at *3 (E.D. Cal. Nov. 22, 2021) (rejecting plaintiff's contention that the

8   defendant intentionally directed its activities towards California through its website, where the

9   defendant presented a declaration contradicting the complaint's allegations that the defendant

10  owned or operated that website); *see also LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852,

11  862–63 (9th Cir. 2022) (refusing to credit an allegation, "directly refute[d]" by the defendant's

12  declaration, because courts cannot "assume the truth of allegations in a pleading which are

13  contradicted by affidavit" (internal quotation marks omitted)).[11]

14         But even if the pitch meeting between Sony and ***other*** Tencent entities could somehow be

15  attributed to Tencent Holdings, Sony has failed to make a prima facie showing that any actions at

16  this meeting caused harm to Sony.  *See Est. of Daher v. LSH Co.*, 661 F. Supp. 3d 981, 990 (C.D.

17  Cal. 2023) (failure to satisfy the "harm" prong of the "effects" test means that the plaintiff has

18  failed to show that the court has specific personal jurisdiction over the defendant).  Nothing that

19  occurred at the San Francisco meeting—*i.e.*, a request to a "license in the *Horizon* intellectual

20  property", Compl. ¶ 22—is alleged to be an act of copyright or trademark infringement.  Indeed,

21  the Complaint does not allege that Tencent was seeking a license for the ***creation*** of the *Light of

22  Motiram* game (as opposed to something like a crossover[12]).  Instead, Sony alleges that "Tencent

23

---

24  [11] When deciding a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the

25  court may "consider declarations and other evidence outside the pleadings to determine whether it
    has personal jurisdiction."  *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 769 (N.D. Cal. 2025) (internal

26  quotation marks omitted); *see also Mavrix Photo, Inc.*, 647 F.3d at 1223.  The court "may not
    assume the truth of allegations in a pleading which are contradicted by affidavit." *Lee*, 773 F. Supp.

27  3d at 768 (internal quotation marks omitted); *LNS Enters. LLC*, 22 F.4th at 862–63.

    [12] For example, the spin-off game LEGO Horizon Adventures was "created by Guerilla . . . and

28  Studio Gobo, working in close partnership with the team at LEGO."  Ex. 5 (cited in Compl. at 14
    n.11).

1    executives" pitched "licens[ing] Sony's intellectual property rights in the *Horizon* Franchise to

2    create a mobile video game set in the *Horizon* universe," Compl. ¶ 65 (emphasis added).  *Light of*

3    *Motiram* is not "set in the Horizon universe," *see id.* ¶ 89 (alleging that the *Light of Motiram* setting

4    is "similar" to the *Horizon* setting), nor is it expected to be solely a mobile game, as evidenced by

5    details on its Steam page—cited in footnote 2 of the Complaint—identifying it as a "PC" (*i.e.*, a

6    desktop or laptop computer) game, *see* Ex. 4 (listing "Windows 10, 64-bit or higher" as a minimum

7    system requirement).

8        At any rate, as Sony itself alleges, development of the purportedly infringing *Light of*

9    *Motiram* video game began **before** the meeting in March 2024.  *See id.* ¶ 5 ("Upon information

10   and belief, sometime in 2023 . . . Tencent started developing a video game called '*Light of*

11   *Motiram*'").  And development continued thereafter.  *See id.* ¶ 6.  The meeting was thus not a

12   contact with the forum "from which the alleged harm arose."  *Heiting v. Marriott Int'l, Inc.*, 743

13   F. Supp. 3d 1163, 1171 (C.D. Cal. 2024) (explaining that the court "does not focus on [] attenuated

14   contacts" in determining the applicability of specific jurisdiction); *see Allergan, Inc. v. Merz*

15   *Pharmaceuticals, LLC*, 2011 WL 13323227, at *4–6 (C.D. Cal. Aug. 1, 2011) (finding the plaintiff

16   failed to satisfy the third prong of the "effects test" where the "connection between [the

17   d]efendant's actions and [the p]laintiff's harm" was too attenuated); *cf. Pangaea, Inc. v. Flying*

18   *Burrito LLC*, 647 F.3d 741, 747 (8th Cir. 2011) (finding no personal jurisdiction over a non-

19   resident defendant based on a single in-forum meeting to license a trademark).

20       In short, Sony has not alleged a sufficient connection between the San Francisco meeting

21   and any alleged act of copyright or trademark infringement causing harm.

22           b.    The conclusory allegation that Tencent Holdings "intentionally
23                 planned, authorized, and facilitated infringing acts that have or will
                   take place in California"

24       Sony's barebones allegation that Tencent Holdings "has intentionally planned, authorized,

25   and facilitated infringing acts that have or will take place in California, including licensing and

26   distributing infringing material," Compl. ¶ 36, is also insufficient to satisfy Sony's burden to

27   establish the existence of specific personal jurisdiction.  "[M]ere 'bare bones' assertions of

28   minimum contacts with the forum or legal conclusions unsupported by specific factual allegations

will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).  The Complaint offers no specific factual allegations to back up Sony's contention that Tencent Holdings has planned, authorized, or facilitated any infringement (including by licensing or distributing "infringing material").  Indeed, just nine paragraphs in Sony's 150-paragraph complaint mention Tencent Holdings by name.[13]  The only allegation that "supports" Sony's conclusory jurisdictional allegation that Tencent Holdings "has intentionally planned, authorized, and facilitated infringing acts," Compl. ¶ 36, is ***itself*** too conclusory to satisfy Sony's pleading burden.  *See id.*. ¶ 18 (alleging that Tencent Holdings "intends to publish and distribute, *or to* license *or* otherwise authorize the publishing and distribution of, the game *Light of Motiram* in the United States." (emphasis added)).  Without more, Sony's allegations that Tencent Holdings is engaged in hypothetical infringing acts "that have or will take place in California" and that Tencent Holdings knows these acts "will harm a resident of this District" are woefully deficient.  *See, e.g.*, *Golden State Water Co. v. 3M*, 2021 WL 221787, at *3 (C.D. Cal. Jan. 20, 2021) (finding that a conclusory allegation that the defendants "engaged in marketing, development, manufacture, distribution, release, training of users of, production of instructional materials about, sale and/or use of [PFAS]-containing materials, including in California" was insufficient to support personal jurisdiction).

               c.     The *Light of Motiram* Trademark Application and Sony's Remaining Allegations

The only other specific allegation levied against Tencent Holdings in the Complaint is its application to the United States Patent and Trademark Office to register the trademark LIGHT OF MOTIRAM for downloadable computer application software and related entertainment services.

---

[13] *See* Compl. ¶ 1 (identifying Tencent Holdings as a defendant); *id.* ¶ 17 (alleging that Tencent Holdings is incorporated in the Cayman Islands and headquartered in Shenzhen, China); *id.* ¶ 18 (alleging that Tencent Holdings applied to register a trademark with the U.S. Patent & Trademark Office and that it intends to publish, distribute, license, or otherwise authorize the publishing and distribution of *Light of Motiram*); *id.* ¶ 19 (alleging that "Tencent Holdings' executives approached Sony in person in San Francisco"); *id.* ¶ 65 (similar); *id.* ¶ 20 (alleging that Tencent Shanghai is controlled by Tencent Holdings); *id.* ¶ 23 (alleging that Tencent America is the "United States arm of Tencent Holdings"); *id.* ¶ 26 (referring to "Tencent Holdings' Level Infinite global video game publishing brand"); *id.* ¶ 36 (alleging that Tencent Holdings is subject to specific jurisdiction in this District); *id.* ¶ 42 (alleging that venue is proper as to Tencent Holdings).

1    Compl. ¶ 18.  Sony does not allege that this trademark application supports personal jurisdiction.

2    Even if it did, that allegation would still fall short, as Sony fails to allege that the *Light of Motiram*

3    *trademark* (as opposed to the game itself) infringes any of its own marks or causes it harm.  *See*

4    *Heiting*, 743 F. Supp. 3d at 1171 ("[T]he Court . . . looks only to the contacts from which the

5    alleged harm arose[.]"); *see also Fumoto Giken Co. v. Mistuoka*, 2015 WL 12766167, at *5 (C.D.

6    Cal. Apr. 16, 2015) (rejecting argument that "the mere registration of a trademark with the PTO,

7    without more, amounts to the type of minimum contacts which would justify haling a foreign

8    defendant into federal court" under Rule 4(k)(2)); *Om Recs., LLC*, 2024 WL 3049449, at *13

9    ("Subsequent district court decisions have followed *Fumoto*'s reasoning to find that trademarks or

10   trademark applications do not, without more, establish express aiming.").

11          Further, any other allegations that might implicate Tencent Holdings are vague, referencing

12   "Defendants" or "Tencent" "ambiguously without attributing any conduct to [Tencent Holdings]

13   specifically."  *Lee*, 773 F. Supp. 3d at 769.  Such group pleading is improper and cannot support

14   personal jurisdiction over Tencent Holdings specifically.  *See id.* (rejecting group pleading

15   allegations for personal jurisdiction analysis and noting that "[a] complaint cannot 'engage[] in

16   undifferentiated pleading that fails to make clear what allegations are being made against' each

17   defendant").  *See also infra* Part III.B.

18          To the extent Sony seeks to attribute specific allegations against other defendants to

19   Tencent Holdings under an alter ego or agency theory[14] based on Tencent Holdings' status as a

20   parent company, that attempt also fails.  Simply stating that "Tencent Shanghai is controlled by

21   Tencent Holdings," Compl. ¶ 20, or that Proxima Beta Singapore is a "member of the Tencent

22   group of companies," *id.*¶ 27, does not suffice under Ninth Circuit law.  "[A]s a general rule, where

23   _____

24   [14] The viability of the agency test after the Supreme Court's decision in *Daimler AG v. Bauman*,
     571 U.S. 117 (2014) is unclear.  *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024–25 (9th

25   Cir. 2017) (assuming without deciding that "some formulation of agency analysis" was relevant
     to specific personal jurisdiction and noting that "[n]otwithstanding *Daimler*'s express reservation

26   on the question of agency theory's application to specific jurisdiction, more than one district court
     within our circuit has expressed some uncertainty on that point post-*Daimler*, as the rationale set

27   forth in *Daimler* . . . would seem to undermine application of [our agency test] even in specific
     jurisdiction cases." (internal quotation marks omitted)); *see also Soelect, Inc. v. Hyundai Motor*

28   *Co.*, 2024 WL 4293911, at *6 (N.D. Cal. Sept. 24, 2024) ("[T]he agency test might no longer be
     valid.").

1    a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a

2    forum state may not be attributed to the other." *Axiom Foods*, 874 F.3d at 1071; *see also Ranza v.*

3    *Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship

4    is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another

5    for the purpose of establishing personal jurisdiction.").

6         Sony's inability to satisfy the first prong of the specific personal jurisdiction test justifies

7    dismissal of all claims against Tencent Holdings. *See Soelect, Inc. v. Hyundai Motor Co.*, 2024

8    WL 4293911, at *9 (N.D. Cal. Sept. 24, 2024) ("Because [the plaintiff] has not met its burden on

9    the "purposeful direction" prong, the Court need not reach the "arises out of" prong."); *see also*

10   *Tradin Organics USA LLC v. Terra Nostra Organics, LLC*, 2024 WL 4312215, at *9 (N.D. Cal.

11   Sept. 26, 2024) (granting motion to dismiss without considering the second and third prongs of the

12   specific personal jurisdiction test).

13              **2.    Prong Two: Sony's Claims Do Not Arise Out of Any "Forum-Related**
                **Activities" by Tencent Holdings**
14

15        Even if Sony could establish that Tencent Holdings purposefully directed activities at the

16   forum and that those activities caused Sony harm (which it cannot), Sony must also demonstrate

17   that Tencent Holdings' forum-related activities were either a "but-for" cause of the harm

18   underlying Sony's claims—*i.e.*, that there is a "direct nexus" between Tencent Holdings' forum-

19   related contacts and "the cause[s] of action"—or that there is a "close connection" between

20   Tencent Holdings' "contacts" with the forum and Sony's "injury." *Yamashita v. LG Chem, Ltd.*,

21   62 F.4th 496, 504, 506 (9th Cir. 2023) (internal quotation marked omitted); *see also id.* at 506

22   ("[R]elate to 'does not mean anything goes'" (quoting *Ford Motor Co. v. Montana Eighth Jud.*

23   *Dist. Ct.*, 592 U.S. 351, 362 (2021)). Sony fails to meet its burden on this prong, too, because

24   Sony's alleged injury does not arise out of or relate to any of Tencent Holdings' alleged forum-

25   related activity.

26              a.    Sony's Copyright Infringement Claim

27        Sony has not carried its burden to show that its copyright claim is "close[ly] connect[ed]"

28   or arises out of any purported forum-related activities by Tencent Holdings. *Yamashita*, 62 F.4th

at 506.  Sony alleges that its copyrights in the *Horizon* franchise are being infringed because "Defendants" are (1) "[p]reparing an unauthorized derivative work . . . in the form of *Light of Motiram*;" (2) "[r]eproducing copyrighted elements of the *Horizon* franchise in *Light of Motiram*;" (3) "distributing copies of promotional materials for *Light of Motiram*;" and (4) "[p]ublicly performing *Light of Motiram*."  Compl. ¶ 130.  But the Complaint is devoid of any allegations tying specific actions by **Tencent Holdings** to any of these allegedly harmful activities.  The Complaint identifies Tencent Shanghai as the "developer" of the *Light of Motiram* videogame and Proxima Beta Singapore as the company "responsible for the publication of numerous pre-release marketing materials" for *Light of Motiram*.  Compl. ¶¶ 21-22, 28-30.  In contrast, no non-conclusory allegations identify Tencent Holdings as playing any role in *Light of Motiram*'s development, design, or marketing.  While a single allegation in the Complaint references "Tencent Holdings' Level Infinite global video game publishing brand," other allegations make clear that Proxima Beta Singapore is the company that actually "does business under the brand 'Level Infinite.'"  *Id.* ¶¶ 26, 29.  In reality, Tencent Holdings does not, in fact, conduct any business directly under the Level Infinite brand.  Liang Decl. ¶ 7.  And while the Complaint alleges that Tencent Holdings "intends to publish and distribute, *or* to license *or* otherwise authorize the publishing and distribution of, the game *Light of Motiram* in the United States," Compl. ¶ 18 (emphasis added), this conclusory allegation, without any supporting factual allegations, cannot justify the exercise of jurisdiction.  *See supra* Part III.A.1.b.  At any rate, Tencent Holdings is ***not*** the developer or publisher of *Light of Motiram*.  *Id.* ¶ 4.  That Tencent Holdings applied to register the LIGHT OF MOTIRAM trademark does not suggest otherwise.  As Ms. Liang explains, the vast majority of overseas trademarks in the Tencent portfolio are registered by Tencent Holdings for trademark management purposes, *id.* ¶ 5, not because Tencent Holdings is the entity that will develop, publish, create marketing materials for, or beta test the game.

### b.    Sony's False Designation of Origin Claim

None of the specific forum-related activities that Sony alleges Tencent Holdings participated in relate to Sony's false designation of origin claim under 15 U.S.C. § 1125(a), either.  That claim is premised on the allegation that "Tencent has, without license, adopted and used a

redhaired tribal huntress image, the Aloy lookalike, as a brand identifier for Light of Motiram across Steam banners, website mastheads, social-media avatars (Facebook, Instagram, X, Discord, YouTube, Reddit), app-store icons, and trailer stills." Compl. ¶ 138. The Complaint is devoid of any allegations that Tencent Holdings runs any *Light of Motiram* Steam page, website, or social media pages, or the like. Sony thus fails to demonstrate a "direct nexus" or "close connection" between any alleged forum-related contacts by Tencent Holdings and Sony's purported injury from the use of a "red haired tribal huntress image" in marketing materials.

    c.  Sony's California Common Law Trademark Infringement Claim

Nor is there a "direct nexus" or "close connection" between any activities by Tencent Holdings (forum-related or otherwise) and the allegations underpinning Sony's common law trademark infringement claim. The basis for that allegation is that "Tencent's use of the Aloy lookalike infringes on SIE's rights." Compl. ¶ 148. But there are no allegations in the Complaint regarding Tencent Holdings' use of any "Aloy lookalike" at all.

* * *

Because Sony fails to meet its burden on the first two prongs of the specific jurisdiction test, Tencent Holdings' motion to dismiss should be granted. *See Schwarzenegger*, 374 F.3d at 802 ("If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.").

### 3. Prong Three: Exercising Personal Jurisdiction Over Tencent Holdings Is Not Reasonable

Even if the Court finds that Sony has somehow satisfied the first two prongs of the specific jurisdiction test (it has not), exercising personal jurisdiction over Tencent Holdings would not be reasonable in this case.

"In determining whether the exercise of jurisdiction comports with fair play and substantial justice, and is therefore reasonable," courts in the Ninth Circuit consider seven factors: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Dole Food Co.*, 303 F.3d at 1114 (internal quotation marks omitted).  All but one of the factors weigh in favor of exercising jurisdiction here.

*Factor 1*: Tencent Holdings has not purposefully injected itself into the affairs of either California or the United States for the same reasons that it lacks sufficient contacts with those fora under the first prong of the specific personal jurisdiction test.  *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) ("The factor of purposeful interjection is analogous to the purposeful direction analysis").

*Factors 2 and 3:* Tencent Holdings is a foreign company incorporated in the Cayman Islands and headquartered in China.  Liang Decl. ¶ 2.  As a foreign corporation with few, if any, forum-related contacts, Tencent Holdings would be significantly burdened if forced to adjudicate this dispute in California.  *See Asashi Metal Indus. Co. v. Superior Ct. of California*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."); *see also Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987) ("In a case . . . in which the defendant has done little to reach out to the forum state, the burden of defending itself in a foreign forum militates against exercising jurisdiction." (internal quotation marks omitted)).  And because Tencent Holdings is a foreign corporation, the "sovereignty barrier" is higher here than if Tencent Holdings were an American company headquartered in another state.  *See Gelasio v. Zafar*, 2024 WL 4634058, at *10 (N.D. Cal. Oct. 30, 2024) (finding that the third factor weighed in favor of defendants where they were "residents of foreign nations"); *see also ChemRisk, LLC v. Chappel*, 2011 WL 1807436, at *7 (N.D. Cal. May 12, 2011) (explaining that where a defendant is "from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction" (internal quotation marks omitted)).

*Factors 4 and 5*:  First, any interest that California or the United States may have in this dispute is minimal.  While Sony may reside here, *see* Compl. ¶¶ 14–15, Sony's claims are premised

on alleged actions occurring abroad, *see id.* ¶¶ 21–22, 30 (alleging that foreign companies Tencent Shanghai and Proxima Beta PTE are involved in the development and marketing of the yet-to-be-released *Light of Motiram* game).  Indeed, U.S. copyright and trademark law do not even extend to extraterritorial acts of infringement.  *See Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994) ("United States copyright law has no extraterritorial application" (citing 3 Nimmer on Copyright § 12.04[A][3][b], at 12–86)); *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 415 (2023) (holding that 17 U.S.C. § 1125(a)—the provision of the Lanham Act under which Sony brings a claim—is "not extraterritorial"); *see also Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454 (2007) ("United States law governs domestically but does not rule the world.").  Second, litigating this dispute in California will not offer the most efficient judicial resolution because presumably the vast majority of the relevant witnesses and evidence will be located abroad.[15]  *See Corwin v. Swanson*, 2010 WL 11598013, at *5 (C.D. Cal. Apr. 27, 2010) (finding that this factor weighed in the defendant's favor where the defendant's headquarters and "a substantial amount of relevant evidence" would be located in a different forum); *see also Young v. Actions Semiconductor Co.*, 386 F. App'x 623, 629 (9th Cir. 2010) ("[A]djudicating this case in California would be inefficient because nearly all the witnesses and evidence are located in China."); *Instasol, LLC v. EM Digit. Ltd.*, 2018 WL 3831292, at *4 (W.D. Wash. Aug. 13, 2018) ("Normally, the most efficient forum is the site where the evidence is located").

*Factors 6 and 7*:  Finally, while it would probably be more convenient for Sony to litigate this case in California (where it resides), Sony would not be precluded from adjudicating this dispute in a different forum, such as China.  *See, e.g.*, *King.com Ltd. v. 6 Waves LLC*, 2014 WL 1340574, at *3 (N.D. Cal. Mar. 31, 2014) (internal citation omitted) (finding China to be an adequate alternative forum for copyright dispute regarding allegedly similar videogames); *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 701 (9th Cir. 1995) (finding Singapore

---

[15] As alleged, the *Light of Motiram* game was designed, developed, and marketed by foreign companies located in Asia.  *See* Compl. ¶¶ 20–22, 27–30, 73.  These allegations alone make clear that the physical evidence and main witnesses will not be in the United States. And the Complaint does not allege specific facts showing that *any* relevant evidence or witnesses would be located in California, or even the United States more broadly.  *See also infra* Part III.B (explaining that the complaint fails to state any claim against either U.S. defendant).

1   to be an adequate alternative forum in copyright dispute regarding software).  Sony carries the

2   burden on this final factor to show that an alternative forum is unavailable, and [a] mere preference

3   on the part of the plaintiff for [its] home forum does not affect the balancing."  *Rippey v. Smith*,

4   1999 WL 1012316, at *8 (N.D. Cal. Oct. 28, 1999).  The relevant question is whether Sony "would

5   be *precluded* from adjudicating the dispute in a different forum."  *Long v. Authentic Athletix LLC*,

6   2016 WL 6024591, at *7 (N.D. Cal. Oct. 14, 2016).  Sony cannot make such a showing because

7   China and Singapore's copyright laws both provide avenues for Sony to adjudicate its claims.

8        **B.**    **Sony Fails to State a Claim Against Tencent Holdings, Tencent America, or**
9                **Proxima Beta U.S. for Copyright or Trademark Infringement**

10        To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

11  factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v.*

12  *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted).  The factual allegations

13  "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing

14  party to be subjected to the expense of discovery and continued litigation."  *Eclectic Prop. E., LLC*

15  *v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (internal citation omitted).  A court

16  need not accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or

17  unreasonable inferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)

18  (internal citation omitted).  The allegations must be both "sufficiently detailed to give notice to

19  [the opposing party] of the nature of [the plaintiff's] claim against him and to give him fair

20  opportunity to defend against it" and sufficiently plausible such that "it is not unfair to require the

21  opposing party to be subjected to the expense of discovery.  *Starr v. Baca*, 652 F.3d 1202, 1216

22  (9th Cir. 2011).  A district court may dismiss a complaint without leave to amend if "amendment

23  would be futile."  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

24        Sony's claims for copyright infringement, false designation of origin, and common law

25  trademark infringement should all be dismissed as against Tencent Holdings, Tencent America,

26  and Proxima Beta U.S. because Sony fails to plead any nonconclusory allegations regarding

27  conduct by any one of those Defendants in support.  All of Sony's claims against the Served

28  Defendants are based on improper group pleading, which do not suffice to state a claim.

Additionally, Sony's claims for false designation and trademark infringement under California common law are deficient because Sony's allegations fail to plausibly allege a protectable trademark that was used in commerce.

### 1. Sony Fails to Allege Any Conduct by Tencent America, Proxima Beta U.S., or Tencent Holdings to Support Its Claims.

Sony utterly fails to plead any nonconclusory allegations of conduct by any of the Served Defendants to support its claims for copyright, false designation, or trademark infringement.

As a preliminary matter, the vast majority of Sony's allegations rest on improper group pleading; rather than plead factual allegations concerning specific conduct by the Served Defendants, Sony instead lumps together all five named defendants as a single entity to assert its claims. *See* Compl. ¶¶ 71, 120, 125, 130 (making collective allegations against "Defendants"); *id.* ¶¶ 1, 5–7, 9, 11, 12, 61, 66–71, 74–81, 85–88, 93, 95, 103, 104, 123–24, 127, 132–34, 138, 139, 141–144, 146, 148–150 (making collective allegations against "Tencent"). It is well-established that such group pleading is improper as it does not satisfy Rule 8's notice requirement. *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("Plaintiff must allege the basis of his claim against *each defendant* to satisfy Federal Rule of Civil Procedure 8(a)(2)[.]") (emphasis added); *In re iPhone Application Litig.*, 2011 WL 4403963, at *8 ("[B]y lumping all [Defendants] together, Plaintiff[ ] ha[s] not stated sufficient facts to state a claim for relief that is plausible against *one* Defendant."); *Stewart v. West,* 2013 WL 12120232, at *3 (C.D. Cal. Sept. 6, 2013) ("[U]ndifferentiated pleading[s] against multiple defendants is improper." (internal quotation and citation omitted)). Instead, "Defendants may be accused of a violation only by supporting allegations that specifically refer to that defendant." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 962 (S.D. Cal. 1996).

To meet Rule 8's pleading requirements, Sony was required to plead facts providing "*each defendant* with fair notice of the allegations made against them[.]" *Russo v. Fed. Med. Servs., Inc.*, 744 F. Supp. 3d 914, 922 (N.D. Cal. 2024) (emphasis added). That means that, with respect to each defendant, Sony had to "plead some non-speculative facts about what [that defendant] infringed and how." *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct.

1   24, 2013).  Setting aside the allegations directed at "Defendants" or "Tencent" collectively, the

2   Complaint is nearly devoid of any allegations regarding the Served Defendants.  Only nine

3   paragraphs in Sony's 48-page, 150-paragraph complaint mention Tencent Holdings, *see supra* note

4   13, only eight mention Tencent America,[16] and just five mention Proxima Beta U.S.[17]  These

5   sparse references do not provide the Served Defendants with notice of the conduct purportedly

6   giving rise to liability for Sony's claims of (i) copyright infringement, (ii) false designation under

7   the Lanham Act, and (iii) common law trademark infringement, and warrant dismissal for the

8   reasons described below.  *See, e.g.*, *In re iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D.

9   Cal. Sept. 20, 2011) (granting motion to dismiss where plaintiffs "fail[ed] to allege what role each

10  Defendant played in the alleged harm," making it "exceedingly difficult, if not impossible, for

11  individual Defendants to respond to Plaintiffs' allegations").

12                         a.      Copyright Infringement (Claim 1)

13         To state a claim for copyright infringement, Sony must plead "(1) ownership of a valid

14  copyright, and (2) copying [by each defendant] of constituent elements of the work that are

15  original." *Beijing Meishe Network Tech. Co., Ltd. v. TikTok Inc.*, 2024 WL 1772833, at *4 (N.D.

16  Cal. Apr. 23, 2024) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

17  Sony's copyright infringement claim is premised on the following allegedly infringing acts: (1)

18  "[p]reparing an unauthorized derivative work of the *Horizon* Franchise in the form of *Light of*

19  *Motiram*"; (2) "[r]eproducing copyright elements of the *Horizon* Franchise in *Light of Motiram*";

20  (3) "distributing copies of promotional materials for *Light of Motiram*"; and (4) "publicly

21  performing *Light of Motiram*."  Compl. ¶ 130.  There are no specific, non-conclusory factual

22  allegations in the Complaint showing that Tencent America, Proxima Beta U.S., or Tencent

23  Holdings participated in any of those acts of infringement.

24  _____

25  [16] *See* Compl. ¶ 1 (defining "Tencent" or "Defendants" collectively to include Tencent America);
    *id.* ¶¶ 23–26 (identifying the company); *id.* ¶ 38 (alleging Tencent America is subject to this

26  Court's general and specific jurisdiction); *id.* ¶ 42 (alleging venue is proper as to Tencent
    America); *id.* ¶ 65 (allegations concerning March 2024 meeting).

27  [17] *See* Compl. ¶ 1 (defining "Tencent" or "Defendants" collectively to include Proxima Beta U.S.);
    *id.* ¶¶ 31-32 (identifying the company); *id.* ¶ 40 (alleging Proxima Beta U.S. is subject to this

28  Court's general and specific jurisdiction); *id.* ¶ 42 (alleging venue is proper as to Proxima Beta
    U.S. LLC).

*Preparing an unauthorized derivative work or reproducing copyrighted elements.* Sony alleges no facts at all to show that Tencent America has or will participate in the development of the *Light of Motiram* game, the alleged derivative work that Sony contends reproduces copyright elements of the *Horizon* Franchise. Sony alleges that Tencent America "has intentionally planned, authorized, and facilitated" unspecified infringing acts (or will do so in the future). Compl. ¶ 38. Those allegations fail to meet even the generous Rule 8 pleading standard. *See, e.g.*, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (the court cannot "assume the truth of legal conclusions merely because they are cast in the form of factual allegations"); *McCarthy v. Johannesson*, 2012 WL 12887540, at *5 (C.D. Cal. Dec. 11, 2012) (granting dismissal where "form pleadings provide[d] [] little factual content and amount to little more than conclusory statements."). Sony's allegation that Tencent America participated in a pitch meeting to potentially license *Horizon* IP to make a mobile game is not tantamount to an allegation that Tencent America "[p]repar[ed] an unauthorized derivative work of the *Horizon* Franchise in the form of *Light of Motiram*" or that it "[r]eproduc[ed] copyright elements of the *Horizon* Franchise in *Light of Motiram*." Compl. ¶ 130.

While slightly more specific, the Complaint's allegations regarding Tencent Holdings and Proxima Beta U.S. are still too conclusory and speculative to state a claim without any supporting facts (of which there are none). All Sony alleges is that Tencent Holdings intends to "publish and distribute, *or* to license *or* otherwise authorize the publishing and distribution of, the game *Light of Motiram* in the United States," *id.* ¶ 18 (emphasis added); *see also id.* ¶ 19, and that Proxima Beta U.S. employees "will assist in the publication *and/or* distribution of Light of Motiram," *id.* ¶ 32 (emphasis added). These allegations fail to identify any *specific* actions taken by Tencent Holdings or Proxima Beta U.S. regarding any intention or plan to "publish," "distribute," "license or otherwise authorize the publishing and distribution" of the *Light of Motiram* game. *See YellowCake, Inc. v. DashGo, Inc.*, 2022 WL 172934, at *7 (E.D. Cal. Jan. 19, 2022) ("Stating that [the defendant] sold, distributed, reproduced, publicly performed, and made derivative works is simply restating terms that are expressly listed as exclusive rights in 17 U.S.C. § 106. . . . Without further factual descriptions that give some examples and explain the acts of infringement, the

allegations merely track the language of § 106 and are thus, conclusory."); *N. Star Innovations, Inc. v. Toshiba Corp.*, 2016 WL 7107230, at *2 (D. Del. Dec. 6, 2016) (granting motion to dismiss where plaintiff failed to allege "that either Defendant [took] part in any *specific* infringing act" and instead "vaguely alleged that they may commit one 'or' another 'or' some 'or' all of the relevant possible acts that would amount to direct infringement.").

Moreover, Sony also fails to allege any non-speculative facts demonstrating that any purported publishing and distribution by the Served Defendants will occur *in the United States*, which is necessary to maintain a claim for infringement under the Copyright Act. *See MMAS Rsch. LLC v. Charite*, 2022 WL 17218074, at *6 (C.D. Cal. Nov. 4, 2022) (dismissing a copyright claim where the plaintiff's complaint did not "demonstrate that [the d]efendants' alleged infringements were completed within the United States.").[18] Sony thus fails to allege that any of the three Served Defendants "prepar[ed] a derivative work" or "reproduce[d] copyrighted elements" of the *Horizon* franchise to support their infringement claim. Compl. ¶ 130.

***Public performance***.  The Complaint lacks any allegations whatsoever that any of the Served Defendants have or will publicly perform *Light of Motiram*.

***Distributing copies of promotional materials***.  The Complaint does not allege that Tencent Holdings or Proxima Beta U.S. has or will distribute allegedly infringing promotional materials for *Light of Motiram*.  And Sony's bare-bones allegation that Tencent America is "currently involved" in various activities ("marketing, promoting, organizing, preparing, and/or operating the forthcoming beta test and release of *Light of Motiram*"), Compl. ¶ 25, is insufficient because it is too general to support a claim without any supporting facts.  *See, e.g.*, *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

In short, Sony's vague, undifferentiated allegations do not provide Tencent America, Proxima Beta U.S., or Tencent Holdings with "sufficient notice of the allegations against them"

---

[18] "[T]he issue of extraterritoriality concerns the Court's subject matter jurisdiction" over Sony's copyright claim, and *Sony*—not Tencent Holdings—"bears the burden of proving that the case is properly in federal court." *MMAS Rsch.*, 2022 WL 17218074, at *6 (citing *Superama Corp. v. Tokyo Broadcasting Sys. Television, Inc.*, 830 F. App'x 821, 823-24 (9th Cir. 2020)).

1  regarding their purported copyright infringement.  *Yu v. Design Learned, Inc.*, 2016 WL 1621704,

2  at *5 (N.D. Cal. Apr. 22, 2016) (internal citation omitted).  Because Sony does not plausibly allege

3  any conduct to support claims for copyright infringement against Tencent America, Proxima Beta

4  U.S., or Tencent Holdings, that claim against them must be dismissed.

5             b.     False Designation (Claim 2), Trademark Infringement (Claim 3)

6             Sony's allegations against the three Served Defendants regarding false designation and

7  trademark infringement are similarly deficient.  To state a claim for false designation of origin

8  under 15 U.S.C. § 1125(a)(1)(A), Sony must allege that: (1) each defendant "used a designation

9  (any word, term, name, device, or any combination thereof) or false designation of origin;" (2)

10 "the use was in interstate commerce;" (3) "the use was in connection with goods or services;" (4)

11 "the designation or false designation is likely to cause confusion, mistake, or deception as to [] the

12 affiliation, connection, or association of [each defendant] with another person, or [] as to the origin,

13 sponsorship, or approval of [each defendant's] goods, services, or commercial activities by another

14 person;" and (5) Sony "has been or is likely to be damaged by these acts."  *JUUL Labs, Inc. v.*

15 *Chou*, 557 F. Supp. 3d 1041, 1053 (C.D. Cal. 2021).  To state a claim for common law trademark

16 infringement, Sony must allege: (1) that it has an "ownership interest in a mark;" and (2) that there

17 is a likelihood of the infringing mark "being confused" with Sony's mark.  *Sebastian Brown*

18 *Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1039 (N.D. Cal. 2015).

19            There is not a single allegation in the Complaint—conclusory or otherwise—that Tencent

20 America, Proxima Beta U.S., or Tencent Holdings adopted or used any of Sony's purported

21 trademarks, let alone any likelihood of confusion.  The only trademark-related allegation levied

22 against any of these three entities is that Tencent Holdings "applied to the United States Patent and

23 Trademark Office to register the trademark LIGHT OF MOTIRAM."  Compl. ¶ 18.  But Sony

24 does not allege that the LIGHT OF MOTIRAM trademark itself is infringing.  Sony's false

25 designation and trademark infringement claims are both premised on the allegation that "Tencent"

26 (defined in paragraph 1 to include all five named defendants collectively) "adopted and used a red

27 haired tribal huntress image, the Aloy lookalike, as a brand identifier for Light of Motiram across

28 Steam banners, website mastheads, social-media avatars (Facebook, Instagram, X, Discord,

YouTube, Reddit), app-store icons, and trailer stills." *Id.* ¶ 138; *see id.* ¶ 148.  The complaint lacks a *single* allegation that Tencent America, Proxima Beta U.S., or Tencent Holdings "adopted and used" an "Aloy lookalike" as a brand identifier in marketing materials.  The complete dearth of factual allegations as to the Served Defendants bars Sony's claims as to those defendants.  *Better Homes Realty, Inc. v. Watmore,* 2017 WL 1400065, at *4 (S.D. Cal. Apr. 18, 2017) (granting individual defendants' motion to dismiss trademark claim where the "complaint [did] not distinguish between the actions" of the entity and the individuals, observing that "cursory references to the individual defendants and the allegations against all defendants generally fail to give the individual defendants notice of their infringing acts").  Sony's false designation and trademark infringement claims, too, must be dismissed as against the Served Defendants.

### 2.    Sony Also Fails To Adequately Plead Essential Elements of Its False Designation and Common Law Trademark Infringement Claims.

In addition to resting on improper group pleading, Sony's false designation claim and California common law trademark infringement claims fail for two additional, independent reasons.  *First*, Sony does not adequately identify the trademark it seeks to protect.  Sony's descriptions of the Aloy character mark in the Complaint are inconsistent, and they do not align with the images of Aloy included in the Complaint.  *Second*, Sony fails to adequately allege specific evidence to show the use of the alleged Aloy character mark in commerce as a signifier of the *Horizon* Franchise.  As a result, even if its allegations with respect to the U.S. Defendants were sufficient (they are not), it still could not maintain these claims.

***Failure to allege protectable mark.***  The elements of claims for false designation of origin under 15 U.S.C. § 1125 and California common law trademark infringement are the same:  they "require[] a showing that the claimant holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to cause confusion, or to cause mistake, or to deceive." *Sarieddine v. Connected Int'l Inc.*, 2025 WL 1768104, at *3 (E.D. Cal. June 26, 2025) (internal citation omitted).  A complaint that fails to identify the trademarks at issue "fail[s] to plead the basic background facts necessary to support a claim for trademark infringement." *Coach, Inc. v. Celco Custom Servs. Co*., 2012 WL 12883972, at *4 (C.D. Cal. Oct. 31, 2012).  A plaintiff must

1   "allege with specificity which of its particular alleged marks the [defendants] infringed upon and

2   how." *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 406 (9th Cir. 2018).

3        Sony claims a trademark in "the Aloy character." Compl. ¶¶ 16, 48.  But Sony does not

4   present a single, consistent identification of this purported mark.  Sony alleges that Aloy is

5   characterized by, among other things, her "tribal-inspired attire, specific-colored accessories, and

6   distinctive facial markings." *Id.* ¶ 3; *see also* ¶ 48.  But even the images included in the Complaint

7   show that the Aloy' character's appearance—including her attire, accessories, and facial

8   markings—varies significantly.  Sony does not specify which particular version of the Aloy

9   character is its claimed trademark, or even which attire, accessories, and facial markings are

10  essential elements of that mark.  Paragraph 98 of the Complaint is illustrative.  In this single

11  paragraph, the Complaint presents Aloy with *six* totally different appearances:



28  Crucially, Aloy differs ***in precisely the aspects that Sony claims characterize her appearance***:

**Attire**:  Her attire is different: she wears, variously, bone-like armor; a sleeveless crop top with red lower-arm bracers; feathered shoulder-garb; a fuchsia layered robe with a hair-like neckpiece; another crop top, but this time with scale-like upper-arm rerebraces; and a teal neck bandana with hide-like shoulder pieces.  To the extent Sony considers Aloy's headgear to be part of her "attire" (it does not say), this, too, differs: she is depicted, variously, with a white bone headpiece with a rising red plume; a bare head; a jagged white, green, and red bone headpiece with splayed, multicolored feathers; a white and fuchsia headpiece with extended horizontal protrusions; a wing-like gold tiara; and a broad, flat gold tiara with a red vertical center line.

**Facial Markings**:  Her facial markings are different: Aloy is depicted, variously, with no facial markings (first and last two images above); tear-drop markings under dark bottom-lid eyeliner (third image); and icy blue wave-like lines under her eyes and on her cheeks (fourth image).

**Accessories**:  Her accessories are different, too: in five of the six images above, she has ***no visible accessories at all***—in other words, the "trademark" lacks one of the very features Plaintiffs identified as essential to the mark.  In the other image above, Aloy carries a staff with purple tassels, a curved blade at one end and a glowing purple flame at the other.  Elsewhere in the Complaint, Aloy appears with completely different accessories, including: a straight staff with no ornamentation, no curved blade, and no flames of any color, Compl. ¶ 6; a beige, white, and orange bow, *id.* ¶ 93; or a black-and-white bow, *id.* ¶ 95.

Sony also alleges that "vibrant orange, deep teal, and earthy browns across her gear" are essential features of the Aloy character mark. *Id.* ¶ 48.  But again, these colors are not consistently prominent—or even visible—in Aloy's gear in the images included in the Complaint and thus cannot reasonably be said to identify a single trademark.  For example, Aloy variously appears in the Complaint in predominantly hot pink and icy blue (with no visible orange, teal, or brown); predominantly white (with no visible brown); and brown and gold (with no visible orange). *See, e.g., id.* ¶ 98.

Finally, Sony claims that Aloy has a distinctive "silhouette" that is "immediately recognizable from a distance." *See id.* ¶ 48; *see also id.* ¶¶ 113, 137.  But the Complaint's

1 descriptions of this so-called silhouette are barebones, confusing, and fail to describe the silhouette

2 with the specificity required to identify it as a trademark.  A "silhouette" is a "portrait obtained by

3 tracing the outline of a profile, head, or figure by means of its shadow or in some other way, and

4 filling in the whole with black," or a "dark outline, a shadow in profile, thrown up against a lighter

5 background."[19]  On the one hand, Sony describes Aloy as having "a layered silhouette that mirrors

6 the fusion of primitive and futuristic elements in the game world."  Compl. ¶ 48.  This description

7 does not make sense; a silhouette is a "two-dimensional" shape or an "outline," and so it cannot

8 be "layered."  It is also vague, and does not explain what the silhouette actually looks like.  Yet

9 Sony also provides a different, equally vague description, referring to Aloy's "fanciful silhouette

10 with tribal accoutrements."  *Id.* ¶ 137.  But here too, there is no description of what exactly makes

11 the silhouette fanciful, or what "tribal accoutrements" are visible.

12        To the extent Sony intends "silhouette" to refer to the shape of Aloy's face or body in

13 profile, the images in the Complaint do not depict any such silhouette, nor do the images in the

14 Complaint present Aloy in a single, consistent pose.  Based on the Complaint, Aloy appears to

15 have no consistent "silhouette."  Her outline varies based on her outfits and accessories, at times

16 appearing bulky, *see id.* ¶ 93, and at other times appearing slim and streamlined when viewed in

17 profile, *see id.* ¶¶ 95, 112.

18        In sum, as the images in the Complaint show, the visual depiction of Aloy varies wildly

19 even in the course of the handful of images Sony chose to feature.  Neither the descriptions in the

20 Complaint, nor the images included therein, are sufficient to identify exactly which features Sony

21 believes comprise its trademark. Sony's trademark claims fail because the Complaint pleads

22 insufficient allegations to identify the purported trademark with specificity.  *See, e.g.*, *Sony*

23 *Pictures Ent., Inc. v. Fireworks Ent. Grp., Inc.*, 137 F. Supp. 2d 1177, 1196 (C.D. Cal. 2001),

24 *vacated pursuant to settlement*, 2002 WL 32387901 (C.D. Cal. Nov. 5, 2002) (finding that

25 plaintiffs failed to specifically identify "exactly what Plaintiffs claim as their trademark . . . rights

26 in the character Zorro").

27
28 [19] *Silhouette*, Oxford English Dictionary, https://www.oed.com/dictionary/silhouette_n (last
visited Sept. 10, 2025).  Courts may also take judicial notice of dictionary definitions.  *See*
*Threshold Enters. Ltd.*, 445 F.Supp.3d at 146.

1    ***Failure to allege use of the mark in commerce***.  A trademark is only protectable if it is

2    used in commerce to designate the source of a product or service.  *Soc. Techs. LLC v. Apple Inc*.,

3    4 F.4th 811, 817 (9th Cir. 2021) (trademark requires "bona fide use in commerce . . . an applicant

4    must show use in commerce in a way sufficiently public to identify or distinguish the marked

5    goods in an appropriate segment of the public mind.") (cleaned up).  An "allegation that [the mark]

6    is used in commerce," "[w]ithout any accompanying evidence in the complaint or incorporated by

7    reference, [] is too bare and conclusory to survive a motion to dismiss."  *Dfinity Found. v. Meta*

8    *Platforms, Inc*., 2022 WL 16857036, at \*4 (N.D. Cal. Nov. 10, 2022) (cleaned up).

9    Here, the Complaint contains only bare-bones, conclusory statements about use of the

10   purported trademark in commerce.  Sony alleges that the Aloy character mark has been used

11   "continuously since at least February 2017 as a source-identifying brand for the *Horizon*

12   Franchise."  Compl. ¶ 48.  Sony alleges that the Aloy character mark has been used in "the *Horizon*

13   videogames, packaging, digital store banners, marketing, social-media avatars, trailers, and

14   merchandise," yet provides almost no evidence of any such use.  *See id.*  The Complaint includes

15   just a handful of promotional images, which appear to be still images from the *Horizon* games,

16   depicting Aloy, as well as mechanical animals, among nature and various ruins.  In these images,

17   Aloy is depicted as just one of the game's many elements, and not as *Horizon's* cardinal, source-

18   identifying brand (*see id.* at 14 & n.11, ¶ 122):



Moreover, the Complaint does not contain or attach any evidence whatsoever to support Sony's claim that the purported character mark is used on "packaging, digital store banners," marketing materials, or merchandise, or as a social media avatar. *See* Compl. ¶ 48. Sony thus has not "[laid] a foundation . . . to show [the mark] is actually used in commerce" to identify the *Horizon* Franchise. *See BuzzBallz, L.L.C. v. BuzzBox Beverages, Inc.*, 2016 WL 7496769, at *3 (C.D. Cal. Apr. 12, 2016) (finding that evidence of trademark applications, registrations, and the homepage of the company's website was insufficient to show trademark was used in commerce). Sony's trademark claims fail because it does not adequately allege that Aloy is used in commerce a brand-identifier. *See In Re Stallard*, 2023 WL 5607600, at *5–6 (TTAB 2023) (affirming denial of proposed character trademark because the mark "identifies only a particular character in a creative work, and it does not function as a trademark to identify and distinguish Applicant's goods from those of others and to indicate the source of Applicant's goods").

**C.     Sony's Claims Are Not Ripe for Adjudication.**

As the vague allegations of the Complaint already preview, Sony's claims against the Served Defendants specifically amount to nothing more than speculation, based almost entirely on future conduct that has not—and may never—occur. The claims are accordingly unripe for adjudication.

Federal courts may only adjudicate actual "cases" or "controversies" under Article III. U.S. Const. Art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A case is unripe

1    when it depends on "contingent future events that may not occur as anticipated, or indeed may not

2    occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *see also S. Pac. Transp. Co. v.*

3    *City of Los Angeles*, 922 F.2d 498, 502–505 (9th Cir. 1990).   Because ripeness "pertain[s] to

4    federal courts' subject matter jurisdiction," it is "properly raised in a Rule 12(b)(1) motion to

5    dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).   "In a

6    facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on

7    their face to invoke federal jurisdiction." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir.

8    2016) (internal quotation omitted).   A court treats a facial subject matter jurisdiction challenge in

9    the same way as a Rule 12(b)(6) motion, *see Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.

10   2014), and "cannot construe the complaint so liberally as to extend [its] jurisdiction beyond its

11   constitutional limits," *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

12          Sony's allegations against the Served Defendants are insufficient to allow this Court to

13   exercise jurisdiction.   As an initial matter, the core of Sony's claims concerns conduct that has not

14   yet occurred: the "forthcoming" release of a video game that *may* infringe Sony's copyrights in

15   the *Horizon* audiovisual works, as well as the purported Aloy character brand, based on early

16   promotional materials.   *See* Compl. ¶¶ 6, 10.   But *Light of Motiram* is not slated for release for

17   ***more than two years***.   Ex. 4; *see LegalForce RAPC Worldwide, P.C v. LegalForce, Inc.*, 2023 WL

18   6930330, at *6–7 (N.D. Cal. Oct. 19, 2023) (dismissing trademark infringement claims because

19   the accused product had not yet launched and was not yet for sale).   It is still under development,

20   as its evolving promotional materials reflect.   Indeed, Sony concedes that the supposed Aloy

21   "lookalike" character on which it bases its trademark claims has been "modified" from the

22   character in early promotional images, reflecting the game's continued development.   Compl.

23   ¶ 123; *see also id.* ¶ 7 n.1 (acknowledging that older "promotion" images have been removed and

24   replaced on the *Light of Motiram* Steam page).   These allegations underscore that Sony's core

25   claims are based on speculation regarding possible infringement that "may not occur as

26   anticipated, or indeed may not occur at all," making Sony's claims, and indeed, its Complaint

27   entirely, unripe for decision.   *Texas*, 523 U.S. at 300; *see, e.g.*, *Kelly v. Univ. Press of Mississippi*,

28   2016 WL 4445986, at *4 (C.D. Cal. Aug. 16, 2016) (dismissing copyright claim based on

1  "forthcoming" book because "no copyright infringement ha[d] yet occurred"); *Washington v.*

2  *ViacomCBS, Inc.*, 2020 WL 5823568, at *5 (C.D. Cal. Aug. 20, 2020) (holding that a proposed

3  movie remake was not ripe because it "ha[d] not been produced and no screenplay yet exist[ed]");

4  *Silverman v. CBS Inc.*, 632 F. Supp. 1344, 1355 (S.D.N.Y. 1986) (holding infringement claim

5  based on forthcoming Broadway play was not ripe because "[u]ntil the plaintiff presents his

6  characters on stage, we cannot tell how closely they duplicate the appearance of the [allegedly

7  infringed] television characters").[20]

8          The handful of allegations regarding conduct by Tencent America, Proxima Beta U.S., and

9  Tencent America consist almost entirely of speculative allegations regarding conduct related to

10 *Light of Motiram's* future release.  *See supra* III.B.  Sony alleges that Proxima Beta U.S. "***will***

11 ***assist***" in the eventual "publication and/or distribution of *Light of Motiram*" sometime in the future,

12 Compl. ¶ 32 (emphasis added), and that Tencent Holdings "***intends*** to publish and distribute, *or to*

13 license *or* otherwise authorize the publishing and distribution of, the game *Light of Motiram* in the

14 United States," *id.* ¶ 18 (emphases added).  The Complaint also alleges that Tencent America "is

15 currently involved ***and/or will be involved*** in marketing, promoting, organizing, preparing, and/or

16 operating the ***forthcoming*** beta test and release of *Light of Motiram* that ***will be*** accessible in the

17 United States."  *Id.* ¶ 25 (emphases added).  These allegations of hypothetical future involvement

18 in preparations for a ***forthcoming*** beta test and ***eventual*** game release—and vague allegations of

19 unspecified "current" involvement in the same—are insufficient to support the exercise of subject

20 matter jurisdiction.[21]

21          The Court therefore lacks jurisdiction to decide the claims against the Served Defendants

22 (even if they were adequately pled, which they are not, *see supra* III.B.) and should dismiss them

23 on this independent basis.

24

25

---

26 [20] To the extent that Sony's claims are based on promotional materials themselves—some of which Sony admits have been taken down and replaced, *see* Compl. ¶ 7 n.1—this constitutes only a small, peripheral aspect of Sony's claims.

27

28 [21] To the extent Sony's claims against these entities are based on past conduct (*e.g.*, Tencent America's executives' alleged participation in a pitch meeting and request for a license), Sony's allegations are insufficient to state a claim, as discussed *supra* III.B.

1

## IV.    CONCLUSION

2          For the foregoing reasons, Tencent America, Proxima Beta U.S., and Tencent Holdings

3    respectfully request dismissal of the claims alleged against them in the Complaint.

4

5    Dated: September 17, 2025                    Respectfully submitted,

6                                                LATHAM & WATKINS LLP

7                                                By /s/ *Sarang V. Damle*
                                                 Sarang V. Damle (admitted *pro hac vice*)
8                                                  *sy.damle@lw.com*
                                                 Sara E. Sampoli (Bar No. 344505)
9                                                  *sara.sampoli@lw.com*
                                                 555 Eleventh Street, NW, Suite 1000
10                                               Washington, D.C. 20004-1304
                                                 Telephone: +1.202.637.2200
11
                                                 Andrew M. Gass (Bar No. 259694)
12                                                 *andrew.gass@lw.com*
                                                 Ivana Dukanovic (Bar No. 312937)
13                                                 *ivana.dukanovic@lw.com*
                                                 505 Montgomery Street, Suite 2000
14                                               San Francisco, CA  94111-6538
                                                 Telephone: +1.415.391.0600
15
                                                 Allison L. Stillman (admitted *pro hac vice*)
16                                                 *alli.stillman@lw.com*
                                                 1271 Avenue of the Americas
17                                               New York, NY 10020
                                                 Telephone: +1.212.906.1200
18
                                                 *Attorneys for Defendants Tencent America,*
19                                               *LLC, Proxima Beta U.S. LLC, and Tencent*
                                                 *Holdings Ltd.*
20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

33

MOTION TO DISMISS COMPLAINT
CASE NO. 3:25-cv-06275-JCS