# Exhibit 15

Asian Domain Name Dispute Resolution Centre

ADNDRC | hong kong

**(Hong Kong Office)**

**ADMINISTRATIVE PANEL DECISION**

| | |
|---|---|
| **Case No.** | **HK-2401913** |
| **Complainant:** | **Tencent Holdings Limited (The Cayman Islands); and** |
| | **Proxima Beta Pte. Limited (Singapore)** |
| **Respondent:** | **web master (Hong Kong)** |
| **Disputed Domain Name(s):** | **<honorofkingsworld.com>** |

## 1.    The Parties and Contested Domain Name

The Complainants are **Tencent Holdings Limited (The Cayman Islands)** and **Proxima Beta Pte. Limited (Singapore)** (hereinafter referred to as the "**Complainant**")**,** of P.O. Box 2681, GT, Century Yard, Cricket Square, Hutchins Drive, George Town, Grand Cayman, Cayman Islands <u>and</u> 10 Anson Road #21-07 International Plaza, Singapore 079903 Singapore respectively.

The Authorized Representative of the Complainant is **Paddy Tam** of CSC Digital Brand Services Group AB (hereinafter referred to as the "**Authorized Representative**"), of Drottninggatan 92-94, 111 36 Stockholm, Sweden.

The Respondent is **web master**/ Expired domain caught by auction winner (maybe for sale on Dynadot Marketplace) (hereinafter referred to as the "**Respondent**"), of 827, 12/F., Podium Caribbean Bazaar, 1 King Tung Road, Tung Chung, N.T., Hong Kong.

Both the Complainant and Respondent are referred to as "**Parties**".

The domain name at issue is <honorofkingsworld.com> (hereinafter referred to as the "**Disputed Domain Name**"), registered by the Respondent with **Dynadot, LLC** of P.O. Box 345, San Mateo CA 94401, United States of America (hereinafter referred to as the "**Registrar**").

## 2.    Procedural History

On or before 21 August 2024, the Complainant appointed Paddy Tam from CSC Digital Brand Services Group AB as its Authorized Representative to handle matters associated with the Disputed Domain Name (*reference **Annex 10 of the Complaint***).

On 21 August 2024, the Complaint (in the English language) was filed with the Hong Kong Office of the Asian Domain Name Dispute Resolution Centre (hereinafter referred to as "**Centre**") by the Authorized Representative, in accordance with the Uniform Domain Name Dispute Resolution Policy (hereinafter referred to as "**Policy**") approved by the Internet Corporation for Assigned Names and Numbers (hereinafter referred to as "**ICANN**") on 24 October 1999, the Rules for Uniform Domain Name Dispute Resolution Policy (hereinafter referred to as "**Rules**") approved by the ICANN Board of Directors on 28 September 2013, and the Asian Domain Name Dispute Resolution Centre (hereinafter referred to as "**ADNDRC**") Supplemental Rules to the ICANN Uniform Domain Name Dispute Resolution Policy and the Rules for the Uniform Domain Name Dispute Resolution Policy (hereinafter referred to as "**Supplemental Rules**") effective 21 August 2023.

On 22 August 2024, the Centre requested the Complainant to settle the case filing fees on or before 1 September 2024 in accordance with paragraph 19(c) of the Rules and Article 15 of the Supplemental Rules.

On 23 August 2024, the Registrar informed the Centre about its verification response disclosing the registrant information for the Disputed Domain Name, in which the Registrar stated that:

1.    The Disputed Domain Name was registered with the Registrar;

2.    web master / Expired dominant caught by auction winner. ***Maybe for sale on Dynadot Marketplace*** is the Registrant of honorofkingsworld.com; his phone number and fax number were both +852 9999999, and his email address was blazingdot@gmail.com;

3.    The domain was moved into the current Registrant's account on 27 November 2023, it is unclear if the Current Registrant was the owner prior to this date;

4.    If a domain expires during a UDRP proceeding, it is of their policy to allow the Complainant or Registrant the opportunity to renew/restore the domain name to prevent deletion;

5.    The domain will remain locked pending the outcome of the UDRP proceedings.

**Notification of Deficiencies**

On 28 August 2024, the Centre informed the Complainant that deficiencies were found in the Complaint with reference to the reply from the Registrar (*reference **Annex 2 of the Complaint***).

According to Article 4(d) of the Rules, the Complainant is hereby required to rectify the above deficiencies within 5 calendar days, i.e., by 2 September 2024, failing which the Complaint will be deemed withdrawn without prejudice to submission of a subsequent Complaint by the Complainant. As confirmed by the Registrar, a lock has been applied to the domain name <honorofkingsworld.com>.

On 5 September 2024, the Centre confirmed that the Complaint is in administrative compliance with the Policy and Rules, and shall forward the Complaint to the Respondent and formally commence the proceedings in according with the Policy and Rules.

**Written Notice of Complaint**

On 5 September 2024, a Written Notice of Complaint was issued to the Respondent, and the Respondent is required to submit a Response in accordance with Article 5 of the Rules to the Centre on or before **25 September 2024**.

On the same day, the case file attaching the Complaint and Annexes were sent to the Respondent by the Centre.

**Appointment of the Panelist**

On 23 September 2024, the Centre wrote to Dr. Christopher To to inquire about his availability to act as a Sole Panelist (hereinafter referred to as the "**Panelist** or **Panel**") in relation to the Disputed Domain Name and whether he is in a position to act between the Parties.

On 24 September 2024, Dr. Christopher To confirmed his availability and that he is able to act independently and impartially between the Parties.

On 26 September 2024, the Centre appointed Dr. Christopher To as the sole Panelist in this

Page 3

matter.

According to Article 11(a) of the Rules, unless otherwise agreed by the Parties, or specified otherwise in the Registration Agreement, the language of the administrative proceeding shall be the language of the Registration Agreement, subject to the authority of the Panel to determine otherwise, having regard to the circumstances of the administrative proceeding.

The language of the Registration Agreement of the Disputed Domain Name is English (*reference **Annex 8 of the Complaint***). Therefore, the language of the proceedings of this Complaint shall be English.

The Panel finds that it was properly constituted and in accordance with paragraph 15(a) of the Rules, the Panelist is of the view that it shall decide the Complaint on the basis of statements and documents submitted to it.

According to Article 15(b) of the Rules, if there are no exceptional circumstances, a decision for the captioned domain name shall be rendered by the Panelist on or before **10 October 2024**.

In accordance with Article15(d) of the Rules, this Panel shall issue a reasoned decision.

3.    **Factual background**

**Complainant**

The Complainant [Tencent Holdings Limited (The Cayman Islands) Tencent Holdings Limited (The Cayman Islands)] is a leading provider of Internet value-added services in China. Since its establishment in November 1998, the Complainant has maintained steady growth under its user-oriented operating strategies (*reference **Annex 6 of the Complaint***). On 16 June 2004, Tencent Holdings Limited (SEHK 700) went public on the main board of the Hong Kong Stock Exchange. Tencent aims to enhance the quality of human life through its Internet services. The company offers social platforms and digital content under its "Connection" strategy. Tencent's major platforms in China are QQ, Weixin/WeChat, QQ.com, QQ Games, Qzone, and Tenpay (*reference **Annex 6 of the Complaint***). These platforms serve various needs, including communication, information, entertainment, and financial services. As of 31 December 2017, QQ had 783 million monthly active users, with a peak of 271 million concurrent users. Weixin and WeChat had a combined 989 million monthly active users. Tencent's development has

influenced communication methods and lifestyles, enabling broader applications in China's Internet industry.

The Complainant maintains a large internet presence through its primary domain name <tencent.com>. According to SimilarWeb.com, Complainant's <tencent.com> website received over 109 million visitors in the 3-month period between April and June 2024 and is ranked the 1,337th most popular website globally and the 52nd most popular website in China.

Proxima Beta Pte. Limited is a subsidiary of Tencent Holdings Limited under its Tencent Games' business and is the owner of trademark registrations for "HONOR OF KINGS" and "HONOR OF KINGS WORLD" across various jurisdictions including the Hong Kong Intellectual Property Department (HKIPD), the China Trademark Office of National Intellectual Property Administration (CNIPA), the European Union Intellectual Property Office (EUIPO) and the United States Patent & Trademark Office (USPTO) (*reference **Annex 1 of the Complaint**)*.

### For Honor of Kings

Honor of Kings is a multiplayer online battle arena (MOBA) game published by Level Infinite under Tencent Games and developed by TiMi Studio Group for the iOS and Android mobile platforms. It was first released in China in November 2015 under its original Chinese name "王者荣耀", which was then later translated into Honor of Kings when it launched globally in 2022. Today, Honor of Kings is the world's most-played mobile MOBA with 100 million players daily.

According to Similarweb.com, the Complainant's website at its primary domain name <honorofkings.com> is ranked 1,911th globally and receives on average over 32 million visits every month (*reference **Annex 7 of the Complaint***). See **Annex 4 of the Complaint** for the WHOIS information of Complainant's primary domain names <tencent.com> and <honorofkings.com>. See **Annex 5 of the Complaint** for screenshot of the Complainant's primary domain names' websites. See **Annex 6 of the Complaint** for Complainant's information about its company and Honor of Kings game.

**Respondent**

The Respondent is **web master**/ Expired domain caught by auction winner (maybe for sale on Dynadot Marketplace).

On 26 September 2024, the Centre informed the Parties that the Centre did not receive a Response from the Respondent in relation to the Complaint on or before 25 September 2024. As such the Respondent has not contested the allegations of the Complaint and is in default.

**Disputed Domain Name**

The Disputed Domain Name was registered by the Respondent on 19 October 2023.

4.    **Parties' Contentions**

A.    **Complainant**

The Complainant's contentions may be summarized as follows:

i.    **Identical/ Confusing Similarity**

As suggested in ***Annex 1 of the Complaint***, the Complainant claims that it is the owner of HONOR OF KINGS and HONOR OF KINGS WORLD trademarks.

The Complainant states that although it has registered trademarks for HONOR OF KINGS but not for HONOR OF KINGS WORLD in Hong Kong and advocates that the Complainant is not required to register HONOR OF KINGS WORLD mark within the country of the Respondent to protect its rights in the mark. The Complainant refers to WIPO Jurisprudential Overview 3.0 at 1.1.2., which states that "*Noting in particular the global nature of the Internet and Domain Name System, the jurisdiction(s) where the trademark is valid is not considered relevant to panel assessment under the first element*" to support its stance.

The Complainant further states that it is standard practice when comparing a Disputed Domain Name to the Complainant's trademark, to exclude the extension into account. The Complainant makes reference to WIPO Jurisprudential Overview 3.0 at 1.11.1., which states that *"The applicable Top-Level Domain ("TLD") in a domain name (e.g., ".com", ".club", ".nyc") is viewed as a standard registration requirement and as such is disregarded under the first element confusing similarity test*" to reinforce its viewpoint.

The Complainant asserts that in forming the Disputed Domain Name, the Respondent has added the generic, descriptive term "world" to Complainant's HONOR OF KINGS trademark, minus the spaces between the terms in the trademark resulting in the Disputed Domain Name being confusingly similar to Complainant's trademark. The fact that such term is closely linked and associated with the Complainant's brand and trademark only serves to highlight and increase the confusing similarity between the Disputed Domain Name and the Complainant's trademarks.

The Complainant further asserts that past Panels have consistently held that a Disputed Domain Name that consists merely of a Complainant's trademark and an additional term that closely relates to and describes that Complainant's business is confusingly similar to that Complainant's trademark. The Complainant cites the case of *Inter IKEA Systems B.V. v. Franklin Lavall?e / IkeaCuisine.net*, D2015-2042 (WIPO, Dec. 22, 2015) and makes reference to WIPO Jurisprudential Overview 3.0 at 1.8.,  which states that "*Where the relevant trademark is recognizable within the disputed domain name, the addition of other terms (whether descriptive, geographical, pejorative, meaningless, or otherwise) would not prevent a finding of confusing similarity under the first element*" to affirm its stance.

The Complainant contends that the Respondent's omission of the spaces between the terms of the Complainant's HONOR OF KINGS and HONOR OF KINGS WORLD trademarks does nothing to distinguish the Disputed Domain Name from the Complainant's trademark.  The Complainant further contents that the absence of such spaces does not diminish the confusing similarity between the Disputed Domain Name and the Complainant's trademarks and should be

disregarded for purposes of making this determination. The Complainant cites the case of *Nu Mark LLC v. Registration Private, Domains By Proxy, LLC, DomainsByProxy.com / Kevin Mcmunn*, D2017-1243 (WIPO August 8, 2017) to back up its assertion.

Based on the foregoing, the Complainant asserts that the Disputed Domain Name is confusingly similar to the Complainant's HONOR OF KINGS and HONOR OF KINGS WORLD trademarks.

**ii.    Rights or legitimate interests**

The registrations granted by the HKIPD, CNIPA, EUIPO and USPTO to the Complainant for the HONOR OF KINGS and HONOR OF KINGS WORLD trademarks serves as prima facie evidence of the validity of the term "honor of kings world" as a trademark, of the Complainant's ownership of the trademark, and of the Complainant's exclusive right to use the HONOR OF KINGS WORLD trademarks in commerce on or in connection with the goods and/or services (*reference **Annex 1 of the Complaint***).

The Complainant contends that the Respondent is not sponsored by or connected with the Complainant in any way. Additionally, t h e Complainant has not granted the Respondent permission, authorization or license to use Complainant's trademarks in any manner, including domain names. Therefore, the Complainant is of the view that the Respondent does not have actual or contemplated bona fide or legitimate use of the Disputed Domain Name. The Complainant refers to the Panel the case of S*portswear Company S.P.A. v. Tang Hong*, D2014-1875 (WIPO Dec. 10, 2014) to support its position.

The Complainant further contends that the Respondent is not commonly known by the Disputed Domain Name, which evinces a lack of rights or legitimate interests (*reference **Annex 2 of the Complaint***). The Complainant refers to the Panel the case of *World Natural Bodybuilding Federation, Inc. v. Daniel Jones TheDotCafe*, D2008-0642 (WIPO Jun. 6, 2008) and the panel in that case stated that "*finding that a respondent, or his/her organization or business, must have been commonly known by the at-issue domain at the time of registration in order to have a legitimate interest in the domain*".

In this case, the relevant Whois information lists the registrant as "*web master / Expired domain caught by auction winner. \*\*\*Maybe for sale on Dynadot Marketplace\*\*\**", which does not resemble the Disputed Domain Name in any manner and form (*reference **Annex 2 of the Complaint***).Therefore, since there is no evidence, including the Whois record for the Disputed Domain Name, indicating that the Respondent is commonly known by it, the Respondent cannot be considered to have acquired rights or legitimate interests in the Disputed Domain Name. The Complainant refers to the Panel the case of *Moncler S.p.A. v. Bestinfo,* D2004-1049 (WIPO, Feb. 8, 2005) to support its stance.

Additionally, the Complainant alleged that, at the time the Complaint was filed, the Respondent was utilizing a privacy WHOIS service, which previous panels have also deemed indicative of a lack of legitimate interest. The Complainant refers to the Panel the case of See *Jackson National Life Insurance Company v. Private WhoIs wwwjacksonnationallife.com N4892*, D2011-1855 (WIPO Dec. 23, 2011) in this aspect.

It is evident that the Respondent is using the Disputed Domain Name to redirect internet users to a page on the domain marketplace "Dan.com", where the domain is listed for sale (*reference **Annex 3 of the Complaint***). The Disputed Domain Name is being offered for sale for USD $2,588, an amount that far exceeds the Respondent's out-of-pocket expenses  in registering the domain name, which serves as further evidence of the Respondent's lack of rights and legitimate interests. The Complainant refers to the Panel the case of  *Reese v. Morgan*, FA 0917029 (NAF Apr. 5, 2007) to support its position.

The Respondent registered the Disputed Domain Name on 19 October 2023, after the Complainant registered its HONOUR OF KINGS trademark with the HKIPD, CNIPA, and EUIPO. The Complainant also acquired the <honorofkings.com> principal domain name in September 2022 (*reference **Annexes 1, 2, 4 and 6 of the Complaint***).

For the reasons mentioned above, the Complainant submits that the Respondent has no rights or legitimate interests in the Disputed Domain Name.

### iii.    Bad faith

The Complainant and its trademarks are known internationally, with trademark registrations across numerous countries, including in Hong Kong where the Respondent is based. The Complainant has marketed and sold its goods and services using the trademark HONOR OF KINGS before Respondent's registration of the Disputed Domain Name.

By registering a domain name that consists of the Complainant's HONOR OF KINGS trademark and adding the term "world" at the end of the trademark, the Respondent has created a domain name that is confusingly similar to the Complainant's HONOR OF KINGS trademark as well as their <honorofkings.com> primary domain (*reference **Annex 4 of the Complaint**)*. As such, the Respondent has demonstrated a knowledge of and familiarity with the Complainant's brand and business. Further, the composition of the Disputed Domain Name is identical to the Complainant's HONOR OF KINGS WORLD trademark, which makes it illogical to believe that Respondent registered the domain name without specifically targeting the Complainant.

The Complainant advocates that, it is "*not possible to conceive of a plausible situation is maintained in which the Respondent would have been unaware of the Complainant's brands at the time the Disputed Domain Name was registered*" and supports such with the case of *Telstra Corp. Ltd. v. Nuclear Marshmallows*, D2000-0003 (WIPO Feb. 18, 2000).

The Complainant submits that HONOR OF KINGS and HONOR OF KINGS WORLD are so closely linked and associated with the Complainant that the Respondent's use of these marks, or any minor variation of them, strongly implies bad faith. The Complainant refers to the Panel the case of *Parfums Christian Dior v. Javier Garcia Quintas*, D2000-0226 (WIPO May 17, 2000), where it states that a domain name is "*so obviously connected with such a well-known name and products,…its very use by someone with no connection with the products suggests opportunistic bad faith.*".

The Complainant also refers the Panel to the case of *Asian World of Martial Arts Inc. v. Texas International Property Associates*, D2007-1415 (WIPO Dec. 10,

2007) by asserting that where the Disputed Domain Name is identical to the Complainant's trademarks and confusingly similar to Complainant's <honorofkingsworld.cn> domain name, "*it defies common sense to believe that Respondent coincidentally selected the precise domain without any knowledge of Complainant and its trademarks.*".

The Complainant states that the Respondent is currently offering to sell the Disputed Domain Name (*reference **Annex 3 of the Complaint**)*, which constitutes bad faith under paragraph 4(b)(i) of the Policy because the Respondent has demonstrated an intent to sell, rent, or otherwise transfer the Disputed Domain Name for valuable consideration in excess of his out-of-pocket expenses (*reference **Annex 8 of the Complaint**)*. The Complainant refers to the Panel the case of *Groupe Auchan v. Bui Tan Dat / Domain ID Shield Service Co., Limited*, D2014-1935 (WIPO, Jan. 4, 2015) where the panel in that case stated that "*The Panel cannot find any justification for the registration and use of the disputed domain name in such circumstances except to find that the Respondent registered and is using the disputed domain name for the purpose of selling the disputed domain name for valuable consideration in excess of the Respondent's documented out-of-pocket costs and/or to disrupt the Complainant's business.*".

The Complainant asserts that previous panels have concluded that evidence of prior panel decisions in which domain names have been transferred away from the Respondent to complaining parties supports a finding that the Respondent has engaged in a bad faith pattern of "cybersquatting." The Complainant refers the Panel to the case of *Arai Helmet Americas, Inc. v. Goldmark*, D2004-1028 (WIPO Jan. 22, 2005) in which the panel in that case found that the "*Respondent has registered the disputed domain name, <aria.com>, to prevent Complainant from registering it*". To support such an argument the Complainant states that the Respondent has previously been involved in cases in which there is evidence of a pattern of cybersquatting namely the following:

- ▪ *CPI Security Systems, Inc. v. web master / Expired domain caught by auction winner.\*\*\*Maybe for sale on Dynadot Marketplace\*\*\**, FA 2107361 (FORUM Aug. 19, 2024).

Page 11

- *Dragonsteel, LLC v. web master, Expired domain caught by auction winner.\*\*\*Maybe for sale on Dynadot Marketplace\*\*\**, D2024-2445 (WIPO Aug. 12, 2024).

- *Belfius Bank SA / Belfius Bank NV v. web master, Expired domain caught by auction winner.\*\*\*Maybe for sale on Dynadot Marketplace\*\*\**, D2024-1473 (WIPO Jul. 1, 2024).

- *Le Duff Industries v. web master, Expired domain caught by auction winner.\*\*\*Maybe for sale on Dynadot Marketplace\*\*\**, D2024-1132 (WIPO Apr. 29, 2024).

- *Groq, Inc. v. web master / Expired domain caught by auction winner.\*\*\*Maybe for sale on Dynadot Marketplace\*\*\**, FA 2077621 (FORUM Jan. 31, 2024).

- *Belfius Bank SA / Belfius Bank NV v. web master, Expired domain caught by auction winner.\*\*\*Maybe for sale on Dynadot Marketplace\*\*\**, D2023-4044 (WIPO Dec. 7, 2023).

- *Gestamp Automoción S.A. v. web master, Expired domain caught by auction winner.\*\*\*Maybe for sale on Dynadot Marketplace\*\*\**, D2023-3898 (WIPO Nov. 10, 2023).

- *MedImpact Healthcare Systems, Inc. v. web master / Expired domain caught by auction winner.\*\*\*Maybe for sale on Dynadot Marketplace\*\*\**, FA 2065111 (FORUM Nov. 6, 2023).

The Complainant states that the Respondent, at the time of filing the Complaint, had employed a privacy service to hide its identity (*reference **Annex 3 of the Complaint***), which past panels have held as further evidence in the support of bad faith registration and use. The Complainant drew to the Panel's attention the case of *Yahoo! Inc. v. cancelyahoo.org Private Registrant/ A Happy DreamHost Customer*, FA 1503412 (NAF July 29, 2013) in which "*Respondent used a privacy service to register the disputed domain name…which raised the rebuttable presumption of bad faith registration and use of the disputed domain name*".

In summary, based on the facts presented, it is likely that the Respondent was aware of the Complainant's trademark, suggesting that the Respondent registered and used the Disputed Domain Name in bad faith. The Complainant brought to the Panel's attention the case of *Tudor Games, Inc. v. Domain Hostmaster, Customer*

*ID No. 09382953107339 dba Whois Privacy Services Pty Ltd / Domain Administrator, Vertical Axis Inc.*, D2014-1754 (WIPO Jan 12, 2014) where the panel in that case "*makes its finding regarding bad faith registration by asking whether it is more likely than not from the record of the evidence in the proceeding that Respondent had the ELECTRIC FOOTBALL trademark in mind when registering the Domain Name.*".

**B.    Respondent**

The Respondent did not reply to the Complainant's contentions. As such, the Respondent has not contested the allegations of the Complaint and is in default.

**5.    Findings**

Having considered all the documentary evidence before me, and the Respondent's non-participation in these proceedings after being afforded every opportunity to do so in accordance with Article 5(f) of the Rules, the Panel is of the view that it should proceed to decide on the Disputed Domain Name, based upon the Complaint and evidence as adduced by the Complainant.

To clarify, the Panel wishes to reiterate that whilst all the evidence adduced and submissions made have been carefully considered by this Panel, the fact that some of the matters or issues raised have not been specially dealt with below does not mean that they have been omitted and not considered by the Panel.

Article 5(f) of the Rules stipulate that:

"*If a Respondent does not submit a response, in the absence of exceptional circumstances, the Panel shall decide the dispute based upon the complaint.*"

Article 10(d) of the Rules stipulate that:

"*The Panel shall determine the admissibility, relevance, materiality and weight of the evidence.*"

Article 11(a) of the Rules stipulate that:

> "*Unless otherwise agreed by the Parties, or specified otherwise in the Registration Agreement, the language of the administrative proceeding shall be the language of the Registration Agreement, subject to the authority of the Panel to determine otherwise, having regard to the circumstances of the administrative proceeding.*"

In the present case, the Parties had not agreed to use a particular language for these proceedings. As the Registration Agreement (*reference **Annex 8 of the Complaint***) is in the English language, as confirmed by the Registrar in its correspondence with the Centre on 23 August 2024, as such in accordance with Article11(a) of the Rules, the language of the administrative proceedings shall be English.

On 2 September 2024, the Complainant provided the Centre with a copy of the updated Complaint and Annexes in the English language.

On 5 September 2024, the Centre provided the same to the Respondent.

The Policy provides, at Paragraph 4(a), that each of three findings must be made in order for a Complainant to prevail:

    (i)      The Respondent's domain name **is identical or confusingly similar** to a trademark or service mark in which Complainant has rights; and

    (ii)     The Respondent has **no rights or legitimate interests** in respect of the domain name; and

    (iii)    The Respondent's domain name has been registered and is being used in **bad faith**.

The Panel would like to state that the Respondent's non-participation in these proceedings (i.e. default) would not by itself mean the Complainant's claims are deemed to have prevailed. In fact, the Respondent's default is not necessarily an admission that the Complainant's claims are valid. The burden of proof still rests with the Complainant to establish the three elements contained with Paragraph 4(a) of the Policy as stated above by a preponderance of the evidence for the Panelist to determine in accordance with Article 10(d) of the Rules.

The Panel would also like to state that although the Complainant has a registered trademark for HONOR OF KINGS WORLD, nevertheless it was registered on 28 December 2023 in China and registered on 29 February 2024 in Europe, which was after the registration of the Disputed Domain Name by the Respondent (19 October 2023) and on this basis the Panel will only consider the HONOR OF KINGS trademark in its determination.

**A.     Identical / Confusingly Similar**

The Complainant contends that the Disputed Domain Name is confusingly similar to the Complainant's trademark of "HONOR OF KINGS" of which the Complainant has prior rights.

The threshold test for confusing similarity under the Policy involves a comparison between the relevant trademarks/marks/logos/wordings belonging to the Complainant and the Disputed Domain Name to ascertain the presence of the trademarks/marks/logos/wordings in the Disputed Domain Name. To satisfy this test, the relevant trademarks/marks/logos/wordings would generally need to be recognizable as such within the Disputed Domain Name, with the addition of merely descriptive, common, or geographical wording typically being regarded as insufficient to prevent a finding of confusing similarity.

In essence, this Panel must consider whether the Disputed Domain Name, namely <honorofkingsworld.com>, is a central and distinguishable part of the Complainant's trademark/mark.

The Disputed Domain Name contain two elements: (i) "honorofkingsworld" and (ii) top-level generic domain ".com". It is well established that the top-level generic domain ".com" does not have trademark significance, conferring no distinctiveness to the domain name sufficient to avoid user confusion, and should be ignored for identifying the "confusing similarity" element.

On a side-by-side comparison of the Disputed Domain Name and the textual components of the Complainant's trademark/mark, the trademark/mark is recognizable within the Disputed Domain Name. In fact, the Disputed Domain Name incorporates the entirety of

the trademark/mark/wordings of the Complainant with the word "HONOR OF KINGS" with the addition of the word "world", which is insufficient to prevent a finding of confusing similarity.

The distinctive part of the Disputed Domain Name <honorofkingsworld.com> is "honorofkingsworld", which is confusingly similar to the Complainant's trademark/mark "HONOR OF KINGS", thus creating a likelihood of confusion amongst Internet users.

The Panel finds that the Complainant has rights in the trademark/mark/wordings acquired through use.

The Panelist agrees with the Complainant's contentions that the Disputed Domain Name is the same and distinguishable part of the Complainant's trademark/mark. The Panelist further concurs with the Complainant's stance that the Disputed Domain Name can easily mislead members of the public into believing that the Disputed Domain Name is owned or operated by the Complainant, or that the Respondent has a relationship or association with the Complainant in some way or form.

As stated previously, the Respondent has not contested the allegations of the Complaint and is in default.

For the foregoing reasons, the Panelist concludes that the Complainant has discharged the burden of proof to establish the elements of identical and confusingly similar trademark or service mark in accordance with Paragraph 4(a)(i) of the Policy.

**B.    Rights and Legitimate Interests**

The burden of proof shifts to the Respondent once the Complainant provides *prima facie* evidence showing that the Respondent lacks legitimate rights or interests.

Paragraph 4(c) of the Policy provides a list of non-exhaustive circumstances, any of which is sufficient to demonstrate that a Respondent has rights or legitimate interests in the Disputed Domain Name:

(i)    before any notice to the Respondent of the dispute, the Respondent's use of, or demonstrable preparations to use, the Disputed Domain Name or a name corresponding to the Disputed Domain Name in connection with a *bona fide* offering of goods or services; or

(ii)   the Respondent (as an individual, business, or other organization) has been commonly known by the Disputed Domain Name, even if the Respondent has acquired no trademark or service mark rights; or

(iii)  the Respondent is making a legitimate non-commercial or fair use of the Disputed Domain Name, without intent for commercial gain to divert consumers misleadingly or to tarnish the trademark or service mark at issue.

Since there is no evidence showing the Respondent is a licensee of or otherwise associated with the Complainant. The Complainant asserts in its Complaint that "*Respondent is not sponsored by or affiliated with Complainant in any way. Furthermore, Complainant has not given Respondent permission, authorization or license or permission from the Complainant to use its trademark…*".

The Complainant has prior rights in trademarks which precede the Respondent's registration of the Disputed Domain Name for the earliest trademark in 2017 (*reference **Annex 1 of the Complaint**).* Complainant's Hong Kong trademark was registered in September 2022, prior to the Respondent's registration of the Disputed Domain Name on 19 October 2023 (*reference **Annex 1, 2, 4 and 6 of the Complaint**).

Paragraph 2.1 of WIPO Overview 3.0 states that:

> "*While the overall burden of proof in UDRP proceedings is on the complainant, panels have recognized that proving a respondent lacks rights or legitimate interests in a domain name may result in the often impossible task of "proving a negative", requiring information that is often primarily within the knowledge or control of the respondent. As such, where a complainant makes out a prima facie case that the respondent lacks rights or legitimate interests, the burden of production on this element shifts to the respondent to come forward with relevant evidence demonstrating rights or*

*legitimate interests in the domain name. If the respondent fails to come forward with such relevant evidence, the complainant is deemed to have satisfied the second element."*

The Panel finds on the record that there is, therefore, a *prima facie* case that the Respondent has no rights or legitimate interests in the Disputed Domain Name, and the burden shifts to the Respondent to produce evidence to rebut this presumption.

The Respondent has failed to show that it has acquired any trademark rights in respect of the Disputed Domain Name or that the Disputed Domain Name has been used in connection with a *bona fide* offering of goods or services. The Complainant has neither authorized nor consented to the Respondent using the Complainant's trademark/mark.

There has been no evidence adduced to show that the Respondent has been commonly known by the Disputed Domain Name.

No evidence has been adduced to show that the Respondent is making a legitimate non-commercial or fair use of the Disputed Domain Name. In fact, the Respondent's website merely offers the Disputed Domain Name for sale (*reference **Annex 3 of the Complaint***).

The Complainant has, in a credible way, alleged that the Respondent has no rights or legitimate interests in respect of the Disputed Domain Name, whereas the Respondent has failed to show that the Respondent has any rights or legitimate interests in respect of the Disputed Domain Name. This sufficiently entitles the Panelist to infer that the Respondent has no rights or legitimate interests in relation to the Disputed Domain Name at issue.

In summary, the Panel is satisfied with the totality of the evidence before it that the Respondent's use of the Disputed Domain Name is not in connection with a *bona fide* offering of goods or services. The Respondent has not been authorized or licensed by the Complainant to use its marks. Nor is there any evidence that the Respondent has been commonly known by the Disputed Domain Name or similar names. Neither is there evidence that the Respondent has been making a legitimate non-commercial or fair use of the Disputed Domain Name, without intent for commercial gain to divert consumers misleadingly or tarnish the Complainant's mark.

In the circumstances, the Panel concludes that, on a balance of probabilities, the Complainant has discharged its burden of proof to show that the Respondent has no rights or legitimate interests in respect of the Disputed Domain Name pursuant to Paragraph 4(a)(ii) of the Policy.

## C.    Bad Faith

According to the background information provided by the Complainant in relation to its business, the Complainant and its HONOR OF KINGS trademark are recognized globally, with registrations in various countries, including Mainland China, Hong Kong, Europe and United States of America. The Complainant has promoted and sold its products and services under this trademark prior to the Respondent's registration of the Disputed Domain Name.

By registering a domain name that includes the Complainant's HONOR OF KINGS trademark, the Respondent has created a domain name that is confusingly similar to both the Complainant's trademark (*reference **Annex 4 of the Complaint***). This indicates the Respondent's awareness of the Complainant's brand and business. Additionally, the composition of the Disputed Domain Name matches the Complainant's HONOR OF KINGS trademark with the addition of the word "world", suggesting that the Respondent specifically targeted the Complainant.

Paragraphs 4(b)(i) – (iv) of the Policy sets out four factors which the Panelist may take into consideration in determining whether the Respondent has registered and used the Disputed Domain Name in bad faith. Any of these four factors being evident would amount to registration and use in bad faith by the Respondent.

Bad faith cannot be presumed, but once the Complainant has presented some evidence to establish a *prima facie* case, the onus then shifts onto the Respondent to either justify or explain its business conduct.

From the evidence submitted by the Complainant, the Panel finds that the Respondent is attempting to use the Disputed Domain Name for the purpose of selling through the website <Dan.com> for valuable consideration in excess of one's documented out-of-

pocket costs directly related to the domain name (*reference **Annex 3 of the Complaint***). As such, the Panel contends that the Respondent's bad faith is evident in Paragraph 4(b)(i) of the Policy:

> *"(i) circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of your documented out-of-pocket costs directly related to the domain name;"*

Based on the aforementioned, this Panel finds that the Complainant has discharged the burden of proof to establish that the Respondent registered and used the Disputed Domain Name in bad faith in accordance with Paragraph 4(a)(iii) of the Policy.

## 6.   Decision

For the foregoing reasons and in accordance with Paragraph 4(a) of the Policy and Article15 of the Rules, the Panelist is satisfied that the Complainant has sufficiently proved the existence of all three elements pursuant to Paragraph 4(a) of the Policy. The Panel orders that the Disputed Domain Name <**honorofkingsworld.com**> be transferred to the Complainant namely Proxima Beta Pte. Limited.

The Panel would like to thank the Centre and the Complainant's Authorized Representative for their assistance in this matter.

_____

Panelist

Dr. Christopher To

Dated:  3 October 2024