1  LATHAM & WATKINS LLP
   Andrew M. Gass (Bar No. 259694)
2    andrew.gass@lw.com
   Ivana Dukanovic (Bar No. 312937)
3    ivana.dukanovic@lw.com
   505 Montgomery Street, Suite 2000
4  San Francisco, CA  94111-6538
   Telephone:  +1.415.391.0600
5
   Sarang V. Damle (admitted *pro hac vice*)
6    sy.damle@lw.com
   Sara E. Sampoli (Bar No. 344505)
7    sara.sampoli@lw.com
   555 Eleventh Street, NW, Suite 1000
8  Washington, D.C. 20004-1304
   Telephone:  +1.202.637.2200
9
   Allison L. Stillman (admitted *pro hac vice*)
10   alli.stillman@lw.com
   1271 Avenue of the Americas
11 New York, NY 10020
   Telephone:  +1.212.906.1200
12
   *Attorneys for Defendants Tencent America,*
13 *LLC, Proxima Beta U.S. LLC, and Tencent*
   *Holdings Ltd.*
14
                    **UNITED STATES DISTRICT COURT**
15
                   **NORTHERN DISTRICT OF CALIFORNIA**
16
                      **SAN FRANCISCO DIVISION**
17

18 |                                              | Case No. 3:25-cv-06275-JSC |

19 SONY INTERACTIVE ENTERTAINMENT
   LLC, a California limited liability company,

20                      Plaintiff,

21          v.

22 TENCENT HOLDINGS LTD., a Cayman
   Islands corporation; TENCENT
23 TECHNOLOGY (SHANGHAI) COMPANY
   LTD. d/b/a AURORA STUDIOS and/or
24 POLARIS QUEST, a Chinese company;
   TENCENT AMERICA LLC, a Delaware
25 limited liability company; PROXIMA BETA
   PTE LTD. d/b/a TENCENT GAMES and/or
26 LEVEL INFINITE, a Singapore corporation;
   PROXIMA BETA U.S. LLC, a Delaware
27 limited liability company; and DOES 1-10,

28                      Defendants.

**TENCENT AMERICA LLC'S, PROXIMA BETA U.S. LLC'S, AND TENCENT HOLDINGS LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR COPYRIGHT AND TRADEMARK INFRINGEMENT**

Judge:      Hon. Jacqueline Scott Corley

# TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................ 1

I.     THIS   COURT   LACKS   PERSONAL   JURSIDCTION   OVER   TENCENT
       HOLDINGS ........................................................................................................ 1

       A.     Sony Fails to Show Purposeful Direction ............................................. 2

              1.     No Tencent Holdings employees attended the March 2024
                     San Francisco meeting. ............................................................. 2

              2.     Tencent    Holdings    has    not    "intentionally    planned,
                     authorized, and facilitated infringing acts" in California ......... 3

              3.     Registration of the *Light of Motiram* trademark does not
                     show Tencent Holdings' participation in U.S. marketing of
                     the game. ................................................................................... 4

              4.     Neither the Alter Ego Nor Agency Test Applies ....................... 5

       B.     Sony Fails to Show That Its Claims Against Tencent Holdings Arise
              Out of Forum-Related Contacts .............................................................. 9

       C.     Exercising Personal Jurisdiction Over Tencent Holdings Is Not
              Reasonable ............................................................................................. 10

       D.     Jurisdictional Discovery Is Unwarranted .............................................. 12

II.    SONY FAILS TO STATE ANY CLAIM FOR RELIEF AGAINST THE SERVED
       DEFENDANTS .................................................................................................. 12

       A.     Sony Fails to Allege Any Specific Conduct by the Served
              Defendants ............................................................................................. 13

              1.     Sony Relies on Improper Group Pleading ................................ 13

              2.     Specific Allegations Against the Served Defendants .............. 14

       B.     Sony Fails to Plead Essential Elements of Its Trademark Claims ....... 15

              1.     Sony Fails to Sufficiently Identify Its Purported Trademark.... 15

              2.     Sony Fails to Allege Use of the Aloy Character in Commerce
                     as a Trademark ........................................................................ 18

III.   SONY'S CLAIMS ARE NOT RIPE FOR ADJUDICATION ........................................ 19

CONCLUSION ............................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Addington v. U.S. Airline Pilots Ass'n*,
  606 F.3d 1174 (9th Cir. 2010) .......................................................................20

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
  125 F. Supp. 3d 945 (N.D. Cal. 2015) ......................................................10, 14

*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*,
  672 F. Supp. 3d 1035 (S.D. Cal. 2023) ...........................................................14

*Ahlstrom v. DHI Mortgage Co.*,
  21 F.4th 631 (9th Cir. 2021) ..............................................................................3

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ............................................................................2

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
  11 F.4th 972 (9th Cir. 2021) ............................................................................10

*Bhatia v. Silvergate Bank*,
  725 F. Supp. 3d 1079 (S.D. Cal. 2024) ...........................................................14

*Burmeister v. Peterson*,
  2024 WL 497145 (N.D. Cal. Feb. 8, 2024) ......................................................10

*Capcom Co. v. MKR Grp., Inc.*,
  2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ..................................................15

*ChemRisk, LLC v. Chappel*,
  2011 WL 1807436 (N.D. Cal. May 12, 2011) ..................................................11

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) ...........................................................5, 7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ...........................................................................................9

*DC Comics v. Towle*,
  802 F.3d 1012 (9th Cir. 2015) ..........................................................................17

*E-Vision Optics, LLC v. Luxottica Group S.p.A.*,
  2024 WL 1601853 (C.D. Cal. Mar. 8, 2024) ...............................................12, 13

*Experience Hendrix, LLC v. Zabell Ent., LLC*,
  2017 WL 11646865 (C.D. Cal. Sept. 8, 2017) .................................................18

*Fleites v. MindGeek S.A.R.L.*,
   2025 WL 2902301 (C.D. Cal. Sept. 26, 2025) .........................................................................5

*Formal Ent. LLC v. Malik*,
   2024 WL 4404426 (C.D. Cal. May 30, 2024) ........................................................................14

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) .....................................................................................12

*Fuld v. Palestine Liberation Org.*,
   606 U.S. 1 (2025) ......................................................................................................................2

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ......................................................................................13

*Gelasio v. Zafar*,
   2024 WL 4634058 (N.D. Cal. Oct. 30, 2024) ........................................................................11

*GoTo.com Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ................................................................................................17

*Hafez v. Vidino*,
   2025 WL 2800719 (D.D.C. Sept. 30, 2025) .............................................................................2

*Hana Fin., Inc. v. Hana Bank*,
   574 U.S. 418 (2015) ................................................................................................................17

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ..................................................................................................7

*Heller v. NBCUniversal, Inc.*,
   2016 WL 6573985 (C.D. Cal. Mar. 30, 2016) .......................................................................14

*Iconlab, Inc. v. Bausch Health Cos.*,
   828 F. App'x 363 (9th Cir. 2020) .............................................................................................6

*In re Baby Food Prods. Liab. Litig.*,
   2025 WL 986959 (N.D. Cal. Apr. 2, 2025) ............................................................................12

*In re Boon Glob. Ltd.*,
   923 F.3d 643 (9th Cir. 2019) ....................................................................................................8

*In re Ca. Gasoline Spot Mkt. Antitrust Litig.*,
   2021 WL 4461199 (N.D. Cal. Sept. 29, 2021) ........................................................................9

*In re Gasoline Spot Litig.*,
   2020 WL 7431843 (N.D. Cal. Dec. 18, 2020) .........................................................................9

*In re Hydroxycut Marketing & Sales Practices Litigation*,
   810 F. Supp. 2d 1100 (S.D. Cal. 2011) ....................................................................................8

*In re Packaged Seafood Products Antitrust Litigation,*
338 F. Supp. 3d 1118 (S.D. Cal. 2018)....................................................................8

*In Re Stallard,*
No. 97115036, 2023 WL 5607600 (Aug. 28, 2023)..........................................17, 18

*In re ZF-TRW Airbag Control United Prods. Liab. Litig.,*
601 F. Supp. 3d 625 (C.D. Cal. 2022)..................................................................11

*Katzir's Floor & Home Design, Inc. v. M–MLS.com,*
394 F.3d 1143 (9th Cir. 2004) ...............................................................................6

*Kelly v. Univ. Press of Mississippi,*
2016 WL 4445986 (C.D. Cal. Aug. 16, 2016)........................................................20

*Ketab Corp. v. Mesriani & Assocs., P.C.,*
734 F. App'x 401 (9th Cir. 2018) .........................................................................15

*King.com Ltd. v. 6 Waves LLC,*
2014 WL 1340574 (N.D. Cal. Mar. 31, 2014).........................................................12

*Laub v. U.S. Dep't of Interior,*
342 F.3d 1080 (9th Cir. 2003) ..............................................................................12

*LegalForce RAPC Worldwide, P.C v. LegalForce, Inc.,*
2023 WL 6930330 (N.D. Cal. Oct. 19, 2023)........................................................20

*Long v. Authentic Athletix LLC,*
2016 WL 6024591 (N.D. Cal. Oct. 14, 2016).........................................................12

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
647 F.3d 1218 (9th Cir. 2011) ...............................................................................2

*Mike's Novelties, Inc. v. PIV Enters., Inc.,*
2024 WL 457120 (E.D. Cal. Feb. 6, 2024), *report and recommendation
adopted,* 2024 WL 1077340 (E.D. Cal. Mar. 12, 2024) .........................................19

*Moody v. Charming Shoppes of Delaware, Inc.,*
2008 WL 2128955 (N.D. Cal. May 20, 2008).........................................................7

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.,*
2014 WL 4675316 (D. Del. Sept. 19, 2014)...........................................................13

*Niantic, Inc. v. Global++,*
2019 WL 8333451 (N.D. Cal. Sept. 26, 2019) ......................................................14

*NuCal Foods, Inc. v. Quality Egg LLC,*
887 F. Supp. 2d 977 (E.D. Cal. 2012)....................................................................8

*Paramount Pictures Corp. v. Axanar Prods., Inc.*,
  2016 WL 2967959 (C.D. Cal. May 9, 2016) ........................................................................20

*Payoda, Inc. v. Photon Infotech, Inc.*,
  2015 WL 4593911 (N.D. Cal. July 30, 2015)..........................................................................8

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ...............................................................................1, 5, 7, 9

*Re-Mktg. Grp., Inc. v. Miller*,
  2021 WL 6103546 (C.D. Cal. Nov. 9, 2021).........................................................................19

*Resh, Inc. v. Skimlite Mfg. Inc.*,
  666 F. Supp. 3d 1054 (N.D. Cal. 2023) ................................................................................13

*Reynolds v. Binance Holdings, Ltd.*,
  481 F. Supp. 3d 997 (N.D. Cal. 2020) ...................................................................................7

*Riot Games, Inc. v. Suga PTE, Ltd.*,
  638 F. Supp. 3d 1102 (C.D. Cal. 2022) ................................................................................11

*Rojas v. Hamm*,
  2019 WL 3779706 (N.D. Cal. Aug. 12, 2019) .......................................................................6

*Roth v. Garcia Marquez*,
  942 F.2d 617 (9th Cir. 1991) ...............................................................................................11

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .................................................................................................2

*Sony Pictures Ent., Inc. v. Fireworks Ent. Grp., Inc.*,
  156 F. Supp. 2d 1148 (C.D. Cal. 2001), *vacated pursuant to settlement*, 2002
  WL 32387901 (C.D. Cal. Nov. 5, 2002).................................................................................16

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) .................................................................................6, 8

*Texas v. United States*,
  523 U.S. 296 (1998)...............................................................................................................20

*Universal City Studios, Inc. v. Nintendo Co. Ltd.*,
  578 F. Supp. 911 (S.D.N.Y. 1983) .................................................................................15, 16

*Van Buskirk v. CNN Inc.*,
  284 F.3d 977 (9th Cir. 2002) ...............................................................................................19

*Warner Bros. Ent. v. Glob. Asylum, Inc.*,
  2013 WL 12114836 (C.D. Cal. Jan. 29, 2013) .....................................................................20

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ..........................................................................................9

*Woodall v. Walt Disney Co.*,
    2021 WL 4442410 (C.D. Cal. Aug. 5, 2021) ....................................................................14

*Yamashita v. LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023) ..................................................................................9, 10, 12

*Zeichner v. Nord Sec. Inc.*,
    2024 WL 4951261 (N.D. Cal. Dec. 2, 2024) .................................................................6, 7

**STATUTES**

15 U.S.C.
    § 1125..............................................................................................................................15
    § 1127..............................................................................................................................15

**RULES**

Rule
    4(k)(2) ...............................................................................................................................2
    8.......................................................................................................................................13

**TREATISES**

3 McCarthy, Trademarks and Unfair Competition § 17:26 (4th ed. 2014) ..................................17

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

1

**PRELIMINARY STATEMENT**

2      This lawsuit was brought against the wrong parties, long before many of the purported acts

3  of infringement have even occurred, regarding intellectual property rights that are, at least in part,

4  not adequately plead.  Sony[1] might be frustrated by the fact that it has to follow the proper

5  procedures and serve the parties that, as alleged, are actually the relevant actors.  But that is no

6  reason to allow a deficient lawsuit to proceed against defendants who are not responsible for the

7  infringing conduct alleged.  The Complaint should be dismissed because Sony has failed to

8  demonstrate that this Court can exercise personal jurisdiction over Tencent Holdings, has failed to

9  allege any specific facts supporting its claims against any of the three Served Defendants, has

10  failed to plead essential elements of its trademark claims, and has failed to demonstrate that its

11  chief claim—development of an allegedly infringing video game—is ripe for adjudication.

12

**ARGUMENT**

13  **I.    THIS   COURT   LACKS   PERSONAL   JURSIDCTION   OVER   TENCENT**
14  **HOLDINGS**

15      Sony alleges no facts, nor introduces any supplemental evidence in its Opposition,

16  demonstrating that this Court has specific personal jurisdiction over Tencent Holdings.[2]  *See* Dkt.

17  61 ("Opp.").  At bottom, Sony's argument appears to be that, because Tencent Holdings is a

18  "global technology conglomerate" with multiple subsidiaries, *see* Opp. at 25, it should answer in

19  court for its subsidiaries' purportedly infringing conduct.  But the law in the Ninth Circuit is clear:

20  "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing

21  one entity's contacts with a forum state to another for the purpose of establishing personal

22  jurisdiction."  *Ranza v. Nike, Inc*., 793 F.3d 1059, 1070 (9th Cir. 2015); *see* Mot. at 14.

23  Accordingly, Sony must show that *Tencent Holdings* "purposefully direct[ed] [its] activities

24  towards the forum" and that Sony's claims "arise[] out of or relate to [*Tencent Holdings*'] forum-

25

---

26  [1] Terms used in this reply are as defined in the Served Defendants' Motion to Dismiss the
   Complaint for Copyright and Trademark Infringement ("Motion").  *See* Dkt. 48 ("Mot.")
27
   [2] Sony contends that it is "reserv[ing] the right to assert general personal jurisdiction."  Opp. at 25
28  n.7.  But it has not alleged that the Court has general jurisdiction over Tencent Holdings.  *See*
   Compl. ¶ 36.

related activities." Mot. at 8–9 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)). Alternatively, Sony would have to demonstrate that the corporate distinctions between Tencent Holdings and its subsidiaries can be ignored under an alter ego or agency theory. It cannot satisfy these standards. And even if it could, exercising personal jurisdiction over Tencent Holdings is not reasonable.[3]

### A.    Sony Fails to Show Purposeful Direction

In its Opposition, Sony concedes that to satisfy the first prong of the test for personal jurisdiction, it must make a prima facie showing that Tencent Holdings "purposefully directed *infringing activities*" at either California or the United States, and that its infringing activity caused harm in one of those fora. Opp. at 27 (emphasis added) & n.8;[4] *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). Sony fails to show that Tencent Holdings purposefully directed any infringing activity at California or the United States causing harm there.

### 1.    No Tencent Holdings employees attended the March 2024 San Francisco meeting.

Sony does not seriously dispute that no Tencent Holdings employees or executives attended the March 2024 San Francisco pitch meeting. *See* Mot. at 9–10 & Liang Decl. (Dkt. 48-1) ¶ 6. Instead, Sony points to the attendance of an individual who identifies himself as an employee of "Tencent Games," *see* Opp. at 29 n.10, in an attempt to conflate "Tencent Games" with "Tencent Holdings." But the two are not synonymous. Sony itself alleges that unserved Defendant Proxima Beta Pte—not Tencent Holdings—"do[es] business as 'Tencent Games.'" Compl. ¶ 28; *see also id.* ¶ 1. And in support of its Opposition, Sony attaches a 2021 complaint filed by Proxima Beta Singapore where it refers to itself as "d/b/a 'Tencent Games.'" Hurst Decl.

---

[3] Tencent Holdings bears the burden on the final prong for specific personal jurisdiction, but *only* if Sony meets its burden on the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

[4] Sony's suggestion that *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 16 (2025) "permits a more flexible jurisdictional inquiry" under Rule 4(k)(2), Opp. at 26, is irrelevant. Sony has limited its argument to the traditional "minimum contacts" analysis. *See id.* at 27 n. 8; s*ee* *Hafez v. Vidino*, 2025 WL 2800719, at *3 (D.D.C. Sept. 30, 2025) (declining to address whether *Fuld*'s holding reaches Rule 4(k)(2) where the plaintiff limited his argument to the traditional analysis).

Ex. 14 (Dkt. 61-15) ¶ 9.[5]  Sony's contention that Tencent Holdings "is an active participant in Tencent Games" because it reports on the revenue and activities of its subsidiary game businesses in investor presentations, *see* Opp. at 28, is insufficient to impute any forum contacts by subsidiaries like Proxima Beta Singapore to Tencent Holdings.  *See Ahlstrom v. DHI Mortgage Co.*, 21 F.4th 631, 636 (9th Cir. 2021) ("Courts adhere to the fundamental principle that corporations, including parent companies and their subsidiaries, are treated as distinct entities."); *see also infra* at Part I.A.4.  Besides, attendance at the pitch meeting, even if that could somehow be attributed to Tencent Holdings, did not cause Sony any harm.  *See* Mot. at 10–11.

### 2. Tencent Holdings has not "intentionally planned, authorized, and facilitated infringing acts" in California.

Sony's barebones allegation that Tencent Holdings planned, authorized, and facilitated infringing acts does not establish that Tencent Holdings expressly aimed any infringing conduct at California or the United States.  *See* Mot. at 11–12.  Sony's Opposition makes no serious attempt to dispute that its allegations are conclusory in nature. It points to no specific facts to support its allegation that Tencent Holdings "intends to publish and distribute, *or* to license *or* otherwise authorize the publishing and distribution of, the game *Light of Motiram*, in the United States," or that Tencent Holdings "directed the development and imminent publication and distribution of the game." Compl. ¶¶ 18–19 (emphasis added).  To the contrary, the Complaint and Sony's additional evidence both reinforce the fact that Tencent Shanghai (doing business as "Polaris Quest") and Proxima Beta Pte are the entities responsible for *Light of Motiram*'s development and publication.  *See id.* ¶¶ 20–22 (Tencent Shanghai d/b/a Aurora Studios or Polaris Quest is the "developer" of the game), *id.* ¶¶ 28–30 (Proxima Beta Pte is "responsible for the publication of numerous pre-release marketing materials" and "is the counter-party to end-user license agreements on all of the *Light of Motiram* official websites and publications."); *see also* Hurst Decl. Ex. 24 (Dkt. 61-24) (Steam page listing Polaris Quest as the game's developer); Ex. 27.B (Dkt. 61-27) at 00:14 (video stating that the game was "developed by Polaris Quest").

---

[5] Contrary to Sony's suggestion, Opp. at 29 n.10, there was nothing improper about relying on Tencent Holdings' in-house counsel to explain that no Tencent Holdings employees attended this meeting.

*Second*, it is not true that Tencent Holdings failed to rebut these conclusory allegations. *See* Opp. at 27 (citing Compl. ¶¶ 18–19).  Tencent Holdings submitted a declaration from an employee stating clearly that it is "not the developer or publisher of *Light of Motiram*," that it did not "create[] marketing materials or prepare[] beta tests for *Light of* Motiram," that it did not attend any meetings with Sony in San Francisco, and that it "had no involvement in any materials prepared for this meeting or any interactions with Sony related to this meeting."  Liang Decl. ¶¶ 4, 6. Sony takes issue with the wording of Ms. Liang's declaration because it does not deny *verbatim* the text of Sony's allegations.  *See* Opp. at 27.  But the declaration is clear: Sony's allegations regarding Tencent Holdings' involvement in *Light of Motiram* are speculative and incorrect.

### 3.    Registration of the *Light of Motiram* trademark does not show Tencent Holdings' participation in U.S. marketing of the game.

Sony contends that Tencent Holdings' registration of the *Light of Motiram* trademark "evidences Tencent Holdings' direct domestic participation in bringing the infringing *Light of Motiram* to California and the United States and participation in the domestic promotional campaign."  Opp. at 28.  It does not.  Tencent Holdings submitted a declaration stating that the vast majority of foreign trademarks for Tencent products and services, including the trademark for *Light of Motiram*, are registered by Tencent Holdings "[f]or the sole administrative purpose of managing trademarks outside of mainland China."  Liang Decl. ¶ 5.  The evidence Sony offers in support of its Opposition substantiates that Tencent Holdings is the administrative registrant for other trademarks in the Tencent global portfolio, including "Tencent Games" and "AURORA A TENCENT GAMES STUDIO."  Hurst Decl. Exs. 10–11 (Dkt. 61-11–61-12).  There are simply no allegations in the Complaint, nor additional evidence offered in opposition to the Served Defendants' Motion, suggesting that Tencent Holdings' registration of the *Light of Motiram* trademark was "intended to generate a nationwide audience" for the videogame.  Opp. at 28 (internal quotation and citation omitted).  And for the reasons articulated in the Served Defendants' Motion, Sony has failed to show that this trademark registration caused harm in this district, or in the United States more generally.  *See* Mot. at 13.

### 4.    Neither the Alter Ego Nor Agency Test Applies

Sony has not adduced any facts to justify imputing the contacts of Tencent Holdings' subsidiaries to Tencent Holdings. Sony argues that the first prong of the personal jurisdiction test is satisfied under an alter ego or agency theory "based on the conduct of . . . Proxima Beta US and Tencent America." Opp. at 29. It also appears to argue that Tencent Holdings is an "active participant in game development and promotion, including *Light of Motiram*, in the United States and California," *id.* at 28, based on a grab-bag of facts meant to show that Tencent Holdings is behind the actions of *all* of its subsidiaries, including unserved defendants Tencent Shanghai and Proxima Beta Pte. But the "veil separating affiliated corporations may . . . be pierced to exercise personal jurisdiction over a foreign defendant" only in "certain limited circumstances." *Ranza*, 793 F.3d at 1071. No such circumstances are present here.

**Alter Ego Test**: Under this test, the corporate veil can be pierced where the parent and subsidiary companies are "not really separate entities," which is "typified by parental control of the subsidiary's internal affairs or daily operations." *Id.* To satisfy the alter ego test, it is the plaintiff's burden to demonstrate (1) "that there is such a unity of interest and ownership that the separate personalities of the two entities no longer exist" and (2) "that failure to disregard their separate identities would result in fraud or injustice." *Id.* at 1073 (alterations adopted and internal quotation marks omitted). The first prong "requires such 'pervasive control' that it can only be met where a parent corporation 'dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation.'" *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983 (N.D. Cal. 2016) (quoting *Ranza*, 793 F.3d at 1073). The second prong requires a showing that "a parent used the corporate form 'unjustly and in derogation of the plaintiff's interest.'" *Fleites v. MindGeek S.A.R.L.*, 2025 WL 2902301, at *26 (C.D. Cal. Sept. 26, 2025) (internal quotation marks omitted). Sony fails to prove either.

*First*, Sony has not demonstrated that Tencent Holdings exercises "pervasive control" over its subsidiaries. Courts consider nine factors under the first prong: "(1) the commingling of funds and other assets of the entities, (2) the holding out by one entity that it is liable for the debts of the other, (3) identical equitable ownership of the entities, (4) use of the same offices and employees,

1   (5) use of one as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization,

2   (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical

3   directors and officers." *Rojas v. Hamm*, 2019 WL 3779706, at *8 (N.D. Cal. Aug. 12, 2019).

4        <u>Commingling of Funds (Factor 1)</u>.  Sony contends that Tencent Holdings "recognizes all

5   revenue from its operations, including its gaming business," Opp. at 5, and that it "reports all of

6   its revenues and debts from games on its annual report without attribution to any subsidiary," *id.*

7   at 30.  But "a parent corporation's sharing of subsidiary entity figures in financial statements is not

8   evidence of a sham corporate veil." *Zeichner v. Nord Sec. Inc*., 2024 WL 4951261, at *4 (N.D.

9   Cal. Dec. 2, 2024) (Corley, J.); *see also Iconlab, Inc. v. Bausch Health Cos.*, 828 F. App'x 363,

10  364–65 (9th Cir. 2020) (submitting consolidated earnings reports reflected "routine operations

11  between a parent and its subsidiary" and did not show the parent's "day-to-day involvement" in

12  the subsidiary's governance").  What this factor *actually* requires is a showing that "the related

13  companies transfer assets among themselves for no ascertainable reason." *Stewart v. Screen*

14  *Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) (Corley, J.).  Sony does not

15  allege or present any evidence of such transfers here.

16       <u>Identical Equitable Ownership (Factor 3)</u>.  Sony contends generally that Aurora Studio(s)

17  (which Sony alleges is another name for Tencent Shanghai, *see* Compl. ¶ 21) is an "in-house"

18  games studio owned by Tencent Holdings, *see* Opp. at 6, that Proxima Beta Pte is "a subsidiary or

19  controlled by Tencent Holdings," and "part of the 'Tencent group of companies,'" *id.* at 7, and that

20  Tencent America and Proxima Beta US are Tencent Holdings' subsidiaries, *id.* at 29.  These facts

21  alone do not show the existence of a sham corporate veil since the "mere fact of sole ownership

22  and control does not eviscerate the separate corporate identity that is the foundation of corporate

23  law." *Katzir's Floor & Home Design, Inc. v. M–MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004).

24       <u>Overlapping Employees, Directors, and Officers (Factors 4 and 9)</u>.  Sony contends that

25  Tencent Holdings "is controlling" its subsidiaries because it shares executives Brent Irvin, Yan Li,

26  and Ma Xiaoyi with certain of those subsidiaries and once had in-house counsel submit a

27  declaration on behalf of Tencent America and Proxima Beta U.S. in court.  Opp. at 30–31.  But it

28  is a "normal attribute of ownership that officers and directors of the parent serve as officers and

directors of the subsidiary." *Corcoran*, 169 F. Supp. 3d at 984 (internal quotation marks omitted). Indeed, the Ninth Circuit has held that shared directors, executives, and offices are not enough to find a unity of interest. *See, e.g.*, *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (insufficient evidence to show an alter ego relationship where the companies were "run by the same senior officers and directors" and "the two companies share the same offices in London, and some of the same staff"); *see also Ranza*, 793 F.3d at 1073 ("Total ownership and shared management personnel are alone insufficient to establish the requisite level of control."). Nor is shared legal counsel enough, either. *See Zeichner*, 2024 WL 4951261, at *4. That Tencent Holdings shares a few executives and officers with its subsidiaries does not show that Tencent Holdings is "controlling" them or that it is hiding behind a sham corporate veil.

<u>Disregard of Corporate Formalities</u>.  Finally, Sony contends that Tencent Holdings and its subsidiaries are alter egos because Tencent Holdings "operates under the generic brand 'Tencent' . . . in shareholder disclosures, public promotion, and branding," makes references to its "Games division," and has stated that it provides "gaming and mobile services to users." Opp. at 5–7, 29–30.  But the use of the brand name "Tencent" and the description of Tencent as a "Group" does not show "pervasive control" over Tencent Holdings' subsidiaries.  There is nothing unusual about a parent company using a unified brand name.  "[C]ourts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos." *Corcoran*, 169 F. Supp. 3d at 984; *see also Reynolds v. Binance Holdings, Ltd.*, 481 F. Supp. 3d 997, 1006 (N.D. Cal. 2020) ("[W]hen confronted with entities' shared websites . . . courts have held this does not reflect an abuse of the corporate form and existence of an alter ego relationship (internal quotation marks omitted)).  Nor is there anything unusual about a parent company making statements about the services and products offered by its subsidiaries.  References by Tencent Holdings to a "Games division" or to "gaming and mobile services" provided by its subsidiaries, Opp. at 5–7, 29–30, do not show pervasive control. *See Moody v. Charming Shoppes of Delaware, Inc*., 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008) (finding that "[g]eneric language on [the defendant's] website," SEC filings that "specify strategy goals" for subsidiaries, and references to "subsidiaries as divisions" did not "rise to the

1    day-to-day control required to impute the subsidiary's contacts to the parent").

2        <u>Liability for Subsidiaries' Debts, Use of Subsidiaries as Shells or Conduits, Inadequate</u>

3    <u>Capitalization, and Unsegregated Business Records (Factors 2, 5, 6, 8)</u>.  Sony does not point to

4    any allegations or present any evidence for these factors.  Thus, they do not point in Sony's favor.

5                                              * * *

6        Sony's scattered observations establish nothing more than the uncontroversial fact that

7    Tencent Holdings is the parent company of a global business with gaming companies in its

8    portfolio.  Sony has offered neither specific allegations nor supplemental evidence that, when taken

9    together, suggest that Tencent Holdings exercises "pervasive control" over its subsidiaries.[6]

10        *Second*, even if Sony could satisfy the first prong of the alter ego test (it cannot), it cannot

11    satisfy the second, since it has not demonstrated that failure to attribute the activities of Tencent

12    Holdings' subsidiaries to Tencent Holdings will result in injustice.  Sony's bare-bones and

13    conclusory assertion that "[f]ailure to disregard corporate separateness in these circumstances . . .

14    would result in an inequitable result," Opp. at 31, is insufficient.  A plaintiff "must allege

15    specifically both of the elements of alter ego liability, as well as facts supporting each."  *Payoda,*

16    *Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911, at *4 (N.D. Cal. July 30, 2015) (internal quotation

17    marks omitted).  To the extent that Sony's position is that the second prong is satisfied based on

18    its argument that "Tencent Holdings is using opaque and controlled subsidiaries to avoid liability,"

19    Opp. at 31, that argument finds no support in Ninth Circuit case law.  *See In re Boon Glob. Ltd.*,

20    923 F.3d 643, 654 (9th Cir. 2019) ("Conclusory allegations that [the defendant] structures

21    companies to escape liability are insufficient to confer personal jurisdiction."); *see also NuCal*

22

---

23    [6] The case law on which Sony relies is inapposite.  *In re Hydroxycut Marketing & Sales Practices Litigation* involved evidence that the parent company's sole owner "exercised pervasive

24    domination and control over the subsidiaries, . . . involving himself in their day-to-day operations." 810 F. Supp. 2d 1100, 1123 (S.D. Cal. 2011).  The holding company at issue in *In re Packaged*

25    *Seafood Products Antitrust Litigation*, had no executives or directors, and executives for a controlling parent company "made any and all decisions for [the holding company]."  338 F. Supp.

26    3d 1118, 1167 (S.D. Cal. 2018).  And the portion of *Stewart* that Sony cites assessed whether the plaintiff alleged sufficient facts to survive a *12(b)(6) motion* on the plaintiff's breach of contract

27    claim, not a 12(b)(2) motion for lack of personal jurisdiction.  *See* 81 F. Supp. 3d at 960–63; *see also id.* at 961 (noting that "[s]ome courts have held that the complaint need only plead at least

28    two factors in support of a unity of interest" to satisfy the unity of interest prong in the context of motion for failure to state a claim).

*Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 994 n.9 (E.D. Cal. 2012) ("[A]lmost every business enterprise in the United States ultimately forms some sort of corporate entity for the purpose of avoiding personal liability").

**Agency Theory**: Sony also half-heartedly invokes the "agency test" as a basis for personal jurisdiction but does not explain how or why the agency test is satisfied. *See* Opp. at 29–30. To the extent the agency test survives,[7] it requires Sony to make a *prima facie* showing that Tencent Holdings "had the right to substantially control" its subsidiaries' activities. *In re Ca. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 4461199, at *2 (N.D. Cal. Sept. 29, 2021) (Corley, J.). That level of control "must be over and above that to be expected as an incident of the parent's ownership of the subsidiary and must reflect the parent's purposeful disregard of the subsidiary's independent corporate existence." *Id.* (internal quotation marks omitted). Sony has not made the requisite *prima facie* showing for the same reasons that it has not shown that Tencent Holdings has "pervasive control" over its subsidiaries under the alter ego test. *See In re Gasoline Spot Litig.*, 2020 WL 7431843, at *7 (N.D. Cal. Dec. 18, 2020) (Corley, J.) (determining that plaintiffs' agency theory fails "[f]or the same reason Plaintiffs' [alter ego] theory of personal jurisdiction fails").

Because Sony fails to satisfy the first prong of the test for specific personal jurisdiction, either by pointing to Tencent Holdings' own actions or through application of the alter ego/agency tests, Tencent Holdings must be dismissed from this action for lack of personal jurisdiction.

**B.    Sony Fails to Show That Its Claims Against Tencent Holdings Arise Out of Forum-Related Contacts**

The second prong of the test for specific personal jurisdiction requires Sony to show its copyright and trademark claims arise out of or relate to forum-related conduct by Tencent Holdings. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023). It has not done so.

---

[7] In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court overturned a Ninth Circuit decision exercising general personal jurisdiction over a foreign parent corporation under an agency theory. In *Ranza*, the Ninth Circuit explained that "[t]he agency test is therefore no longer available . . . to establish jurisdiction over [a foreign parent corporation]." 739 F.3d at 1071. But later cases have suggested that some formulation of the agency test might survive *Daimler* in the context of specific jurisdiction only. *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (assuming without deciding that "some standard of agency continues to be relevant to the existence of specific [personal] jurisdiction").

The Complaint does not suggest that any part of *Light of Motiram*'s development occurred in the United States.  *See* Mot. at 18 n.15.  And the distribution of promotional material for the game does not arise out of relate to forum contacts by Tencent Holdings.  *Id.* at 15.  Sony argues in its Opposition that it has presented evidence showing that Tencent Holdings engaged in "extensive marketing of the game to California, and the United States."  Opp. at 33.  But the exhibits to which it cites (Hurst Decl. Exs. 24.A-38) do not support that proposition; *none* of them even *mention* Tencent Holdings at all.[8]  Neither of the two specific, nonconclusory forum contacts Sony attributes to Tencent Holdings—a pitch meeting about licensing *Horizon* IP (which no one from Tencent Holdings attended) and the registration of the *Light of Motiram* trademark—are a "but-for" cause of Sony's alleged copyright or trademark injury.  *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015), and *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972 (9th Cir. 2021), are thus not on point.  Neither of these contacts "relate" to Sony's alleged injuries, either.  "[R]elatedness proxies for causation, ensuring jurisdiction over a class of cases for which causation seems particularly likely but is not always easy to prove."  *Yamashita*, 62 F.4th at 505. To establish relation, Sony was required to show that (1) "similar injuries will tend to be caused" by Tencent Holdings' contacts; (2) Tencent Holdings "should have foreseen the risk that its contacts might cause injuries like that of the plaintiff;" *and* (3) there is a "close connection between the [Tencent Holdings'] contacts and injury."  *Burmeister v. Peterson*, 2024 WL 497145, at *6 (N.D. Cal. Feb. 8, 2024) (quoting *Yamashita*, 62 F.4th at 505–06) (emphasis added).  There is no reason for Tencent Holdings to have foreseen that a pitch meeting and registering a trademark that is not itself infringing "might cause injuries" like those Sony alleges.

### C.    Exercising Personal Jurisdiction Over Tencent Holdings Is Not Reasonable

Sony's Opposition fails to rebut Tencent Holdings' showing that exercising jurisdiction over Tencent Holdings would not be reasonable.  *See* Mot. at 16–19.

**Factor 1** weighs in Tencent Holdings' favor because it has not purposefully injected itself into the affairs of California or the United States, *see supra* at 2–9.

---

[8] Exhibit 29 (Dkt. 61-29) includes a "© Tencent 2024" footer, but no reference to Tencent Holdings.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

**Factors 2 and 3** weigh in Tencent Holdings' favor because it is a foreign company incorporated in the Cayman Islands and headquartered in China.  Liang Decl. ¶ 2.  Sony has not shown that Tencent Holdings—rather than Tencent America—has an office in Palo Alto.  *See* Hurst Decl. Ex. 17 (Dkt. 61-18) (LexisNexis public records results); *id.* Ex. 16 (Dkt. 61-17) (LinkedIn profile for Tencent America).  Sony points to *Roth v. Garcia Marquez* to support its position, but that case found that factors two and three *both* weighed in the defendant's favor.  942 F.2d 617, 623–24 (9th Cir. 1991).  And in *In re ZF-TRW Airbag Control United Prods. Liab. Litig.*, the court weighed the burden on the foreign corporate defendants against the burden on the individual plaintiffs who had filed the class action in having to litigate in South Korea.  601 F. Supp. 3d 625, 703–704 (C.D. Cal. 2022).  Here, of course, both parties are large corporations, and Sony itself points to evidence showing that its burden of litigating this case abroad would be minimal.  *See* Declaration of Olivier Courtemanche ("Courtemanche Decl."), Dkt. 63, ¶ 12 (stating that Sony's team has traveled to China to meet with Tencent-related game studios).  Finally, Sony points to a case from another district, *Riot Games*, to say that the third factor weighs in its favor, *see* Opp. at 34 (citing 638 F. Supp. 3d 1102, 1118–19 (C.D. Cal. 2022)), but it fails to address Tencent Holdings' two cases from this Court holding that the defendant's foreign status weighed against reasonableness.  *See Gelasio v. Zafar*, 2024 WL 4634058, at *10 (N.D. Cal. Oct. 30, 2024) (Corley, J.); *ChemRisk, LLC v. Chappel*, 2011 WL 1807436, at *7 (N.D. Cal. May 12, 2011).

**Factor 4** does not "weigh heavily in favor of adjudication in this forum" just because California and the United States have an interest in enforcing U.S. copyright and trademark laws.  Opp. at 35.  Sony's claims are largely premised on the foreign development of a game that has not even been released in the U.S. market.  The allegedly infringing acts underlying that development are not domestic acts of infringement for which U.S. copyright law provides a cause of action.  *See* Mot. at 18 (citing case law).

As for **Factors 5, 6, and 7**, Sony does not even address Factor 5, which weighs strongly against exercising jurisdiction here because the vast majority of relevant witnesses and evidence will almost certainly be located abroad.  *See* Mot. at 18 & n.15.  And Sony is incorrect that "there is no alternative forum" because it states claims under U.S. law.  Opp. at 35.  Courts routinely find

that foreign jurisdictions are adequate alternatives for litigating disputes brought under U.S. federal or state law, including intellectual property claims. *See, e.g.*, *King.com Ltd. v. 6 Waves LLC*, 2014 WL 1340574, at *3 (N.D. Cal. Mar. 31, 2014) (finding China to be an adequate forum for copyright claims). Ultimately, it is Sony's burden to show that it "would be *precluded* from adjudicating the dispute in a different forum," *Long v. Authentic Athletix LLC*, 2016 WL 6024591, at *7 (N.D. Cal. Oct. 14, 2016) (Corley, J.). It has not done so.

### D.     Jurisdictional Discovery Is Unwarranted

Sony asks for leave to seek discovery related to unspecified jurisdictional issues in the event the Court "considers any . . . jurisdictional element insufficiently established." Opp. at 35. Whether to grant or deny jurisdictional discovery is within the district court's "broad discretion." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Because Sony has offered no basis for or specifics regarding its request for jurisdictional discovery, its request should be denied. *See Yamashita*, 62 F.4th at 508 (affirming denial of jurisdictional discovery where it would be "little more than a fishing expedition" regarding jurisdictional theories that were either "far fetched" or "specifically denied via sworn statements"); *see also In re Baby Food Prods. Liab. Litig.*, 2025 WL 986959, at *10 (N.D. Cal. Apr. 2, 2025) (Corley, J.) (denying request for jurisdictional discovery "absent further explanation as to what new information would be uncovered through jurisdictional discovery").

## II.    SONY FAILS TO STATE ANY CLAIM FOR RELIEF AGAINST THE SERVED DEFENDANTS[9]

Sony's Opposition fails to salvage its deficient claims for copyright and trademark infringement against each of the Served Defendants.

---

[9] The "factual background" in Sony's Opposition is heavily reliant on supplemental declarations and *42* exhibits. *See* Opp. at 3–8. This additional evidence can only be considered to the extent it is offered to support Sony's 12(b)(2) arguments. *See* Mot. at 10 n. 11. It cannot be considered to amend or bolster the insufficient allegations in Sony's Complaint to oppose the Served Defendants' 12(b)(6) arguments. *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation and citation omitted). To the extent this evidence is offered for that purpose, it must be disregarded. *See E-Vision Optics, LLC v. Luxottica Group S.p.A.*, 2024 WL 1601853, at *3 (C.D. Cal. Mar. 8, 2024) ("A court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint.").

**A.    Sony Fails to Allege Any Specific Conduct by the Served Defendants**

**1.    Sony Relies on Improper Group Pleading**

Sony's position is that it should be relieved of its obligation under Rule 8 to "allege the basis of [its] claim against *each* defendant," *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (emphasis added), because of Defendants' "deliberately opaque corporate structure." Opp. at 12 (citing Compl. ¶ 33). But the allegation that Sony relies on to defend its undifferentiated group pleading is offered to justify Sony's inclusion of ten "Doe" defendants, *not* to explain its inadequate allegations against each of the named defendants. *See* Compl. ¶ 33 (alleging that "[t]here may be one or more additional legal entities in the chain of development, publication, distribution, and/or marketing of *Light of Motiram* who are presently unknown" to Sony).

Besides, the case law is clear: Even in cases involving a corporate group, its holding company, and the same parent's subsidiary, the plaintiff has an obligation to "indicate which individual defendant or defendants are responsible for which alleged wrongful act." *See* Mot. at 20–21; *see also E-Vision Optics, LLC v. Luxottica Group S.p.A.*, 2024 WL 1601853, at *4–5 (C.D. Cal. Mar. 8, 2024) (rejecting "collective infringement allegations" against corporate group, corporate holding company, and subsidiary and dismissing case where "Plaintiffs broadly allege that Defendants committed various acts of infringement" without specification); *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, 2014 WL 4675316, at *7 (D. Del. Sept. 19, 2014) (granting motion to dismiss in matter involving holding company and subsidiaries where "treating these Defendants as one big group for purposes of articulating how each has encouraged the induced infringement at issue says nothing plausible as to what any particular one of them might have done"); *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059–60 (N.D. Cal. 2023) (finding, in a case involving a corporation and its two owners, that "unclear mass of allegations . . . make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations" (internal quotation marks omitted)). Sony's allegations, which almost entirely fail to differentiate between the five named defendants, are insufficient here. *See* Mot. at 20–21.

At least two of Sony's cases support this position. Indeed, the court in *Adobe Sys*. explained that a plaintiff "must identify what action *each Defendant* took that caused Plaintiffs'

harm, *without resort to generalized allegations against Defendants as a whole*." 125 F. Supp. at 964 (emphasis added and internal quotations omitted). It then found that the plaintiff *had* alleged specific conduct against the defendant in question. *See id.* at 966 (determining that Adobe "alleges that Blue Source . . . supplied the SoftwareMedia Defendants with infringing products, and that Blue Source was not authorized to sell or distribute such products"). The same is true of *Niantic, Inc. v. Global++*, where the court found the defendant "ignore[d] the plain language of the complaint" setting forth specific allegations regarding each defendant. 2019 WL 8333451, at *4 (N.D. Cal. Sept. 26, 2019).

None of Sony's other cases rest on similar facts. *Woodall v. Walt Disney Co.*, 2021 WL 4442410, at *6 (C.D. Cal. Aug. 5, 2021), *Formal Ent. LLC v. Malik*, 2024 WL 4404426, at *6 (C.D. Cal. May 30, 2024), and *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035, 1045 (S.D. Cal. 2023), are inapposite because this is not a case where Sony lacks knowledge of which entity is responsible for the alleged conduct. Sony alleges with specificity that Tencent Shanghai, doing business as "Aurora Studios" and/or "Polaris Quest" is the "developer" of *Light of Motiram*. Compl. ¶¶ 21–22. It also alleges that Proxima Beta Pte, doing business as "Tencent Games" or "Level Infinite" is "responsible for the publication of numerous pre-release marketing materials" for *Light of Motiram*. *Id.* ¶¶ 28–30 (pointing to the fact that Proxima Beta Pte "is identified as the counter-party to end-user license agreements on all of the *Light of Motiram* official websites and publications"). Nor is this case one where it is reasonable to believe that all defendants played the exact same role. Sony's reliance on *Heller v. NBCUniversal, Inc.*, then, misses the mark. *See* 2016 WL 6573985, at *3 (C.D. Cal. Mar. 30, 2016) (finding defamation claims plead against "all credited producers" permissible where all "credited producers" participated in making of the same defamatory film); *cf. Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1103–05 (S.D. Cal. 2024) (determining that pleadings against "Silvergate" were proper as against "Silvergate Capital" and "Silvergate Bank" where the plaintiff had adequately plead that the two were alter egos of one another).

### 2. Specific Allegations Against the Served Defendants

Sony's Opposition fails to overcome the deficiencies identified in the Served Defendants'

1    Motion regarding the few specific allegations lodged against each of them.  The Served Defendants

2    respectfully refer the Court to their Motion at 21–25.

3        **B.    Sony Fails to Plead Essential Elements of Its Trademark Claims**

4            **1.    Sony Fails to Sufficiently Identify Its Purported Trademark**

5        Sony's Opposition does not rectify the Complaint's failure to identify a particular,

6    consistent trademark.  Sony does not contest that a plaintiff seeking to bring a false designation of

7    origin claim under 15 U.S.C. § 1125 or a California common law trademark infringement claim

8    must "allege *with specificity* which of its particular alleged marks the [defendants] infringed upon

9    and how."  *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 406 (9th Cir. 2018)

10   (emphasis added).  For character trademarks, this requirement means identifying a "specific,

11   narrowly defined image[]" of the character.  *Universal City Studios, Inc. v. Nintendo Co. Ltd*., 578

12   F. Supp. 911, 924 (S.D.N.Y. 1983).  Because the Complaint fails to provide a specific, consistent

13   identification of Sony's purported trademark and the Opposition provides no further clarification,

14   Sony's false designation and trademark claims should be dismissed.

15       Sony names its trademark "the Aloy character," Compl. ¶¶ 16, 48, but fails to explain what

16   exactly this trademark looks like.  Rather than providing a precise identification, the Opposition

17   claims that "the relevant population [i.e. video game players] recognizes the ALOY Character

18   Mark."  Opp. at 21.  This is an improper attempt to shift the burden of identifying the mark from

19   Sony to the Served Defendants.  But more fundamentally, this explanation misunderstands what

20   makes a trademark:  Aloy's appearance as a playable character inside Sony's video games *is not*

21   *what would make her function as a trademark* — rather, it would be her appearances *outside* the

22   game as a source identifier selling a particular product or service.  *See* 15 U.S.C.A. § 1127

23   (trademark requires use that is "on the goods or their containers or the displays associated therewith

24   or on the tags or labels affixed thereto"); *see also Capcom Co. v. MKR Grp., Inc.,* 2008 WL

25   4661479, at *12 n.8 (N.D. Cal. Oct. 20, 2008) ("use of a character within a visual work falls within

26   the realm of copyright law, not trademark").  Sony's vague description and varying depictions of

27   Aloy's appearance in the game cannot serve as a basis to identify the purported Aloy trademark

28   because they do not provide adequate—or even any—identification of Aloy's appearance in her

1    functioning *as a trademark*.

2        While it may be true that gamers recognize Aloy as a *character* inside the *Horizon* game,

3    Sony fails to identify Aloy's appearance *as a trademark* outside the game.  In the Complaint, Sony

4    says that the purported mark is characterized by its attire, accessories, and facial markings, Compl.

5    ¶ 3; *see also* ¶ 48.  But generalized descriptions are not enough to identify a trademark.  In *Sony*

6    *Pictures Ent., Inc. v. Fireworks Ent. Grp., Inc*., 156 F. Supp. 2d 1148 (C.D. Cal. 2001), *vacated*

7    *pursuant to settlement*, 2002 WL 32387901 (C.D. Cal. Nov. 5, 2002), for example, the court

8    rejected the plaintiffs' attempt to claim trademark protection over the fictional character Zorro

9    based on a combination of visual "aspects" rather than pointing to a *specific image* of Zorro.  *Id.*

10    at 1162–63; *see also Universal City Studios*, 578 F. Supp. at 924 (S.D.N.Y. 1983) (no trademark

11    protection for "[a] vaguely defined character lacking a specific image").  Sony fails to identify,

12    through description or images, *which* attire, accessories, and facial markings comprise the

13    purported trademark (or indeed, if any are in fact essential to the purported trademark).

14        This omission is highlighted by the fact that the Complaint provides several in-game

15    images of Aloy in which her attire, accessories, and facial markings—the very elements that Sony

16    claims are essential to identifying the character—differ significantly, *see* Mot. at 26–27 (detailing

17    the extensive changes in these elements, which are present in images Sony provides in just one

18    paragraph of the Complaint).  There is no way to know which (if any) of these in-game variations

19    functions as the purported trademark.  Thus, Sony's own Complaint undermines the claim that

20    these three elements provide a trademark with a distinct, consistent look.  The varied appearances

21    may not cause confusion for gamers within the game, but Sony does not explain which (or even

22    whether any) of these variations comprise Aloy's appearance as a trademark outside the game.

23        In its Opposition, Sony does not provide any further clarity or detail, or describe the

24    purported Aloy trademarks' appearance any further.  Instead, Sony goes the opposite route,

25    admitting that "Aloy's appearance and costumes change," Opp. at 21.  Sony attempts to sidestep

26    this issue by saying that "[o]f course" Aloy's details change, because she is "*the main character*

27    *of a videogame*," Opp. at 21. But Sony has things backwards:  Purported trademarks do not receive

28    special treatment because they happen to also appear as characters in games or media.  Rather,

characters that appear in games or media only become trademarks when they are used in a consistent, identifiable manner as a source identifier for a product or service *beyond* their role as a game character. *See, e.g.*, *In Re Stallard*, No. 97115036, 2023 WL 5607600, at *5 (Aug. 28, 2023) ("Video game characters are not per se registrable without a showing that they function as marks."). As such, character trademarks, like all other trademarks, must still be clearly identified.

Sony's cited authority does not say otherwise because none of it addresses the requirement of trademark identification when bringing a claim. *GoTo.com Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000), discusses degree of similarity between two already identified marks for the purpose of determining likelihood of confusion between them. 3 McCarthy, Trademarks and Unfair Competition § 17:26 (4th ed. 2014) deals with commercial impression in the context of trademark abandonment, not trademark identification. *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418 (2015), considers "tacking" to determine the priority date of a mark that had changed slightly over time. And *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015), assesses *copyright*, not trademark, protectability.

Sony's attempt to dismiss the variations it now admits to as mere "details," Opp. at 21, cannot be taken seriously, because Aloy's attire, accessories, and facial markings are not just any details—they are *precisely the details that Sony claims make the character an identifiable trademark.* And Sony's statement that "Mickey Mouse in Fantasia is still recognizably Mickey Mouse," *id.*, misunderstands the relevant standard, because whether or not Mickey Mouse is recognizable as a single character within a movie about Mickey Mouse does *not* establish that Mickey Mouse can alter his appearance and still function as a single trademark when he appears as a source identifier selling products or services. Indeed, Disney itself, likely recognizing this very point, has over the years applied to register various trademarks with different Mickey Mouse appearances, thereby *not* assuming that a single Mickey Mouse trademark is enough to cover all variations in Mickey's appearance. *See, e.g.*, U.S. Ser. Nos. 77253806 (Mickey upper body only); 78864154 (Mickey with all-black eyes); 75311898 (Mickey full body visible in profile); 75207616 (Mickey in profile with wider, rounder body); 75308856 (Mickey head silhouette); 74125949 (Mickey in chef's hat and apron) (collected in Exhibit A).

Finally, Sony's claim that Aloy's "silhouette" functions as a trademark remains impermissibly vague. The Opposition only further obfuscates this claimed element by now claiming the term silhouette is a mere "idiom," Opp. at 24, apparently conceding the lack of any defined silhouette feature of the purported trademark.

### 2. Sony Fails to Allege Use of the Aloy Character in Commerce as a Trademark

Fame does not create a trademark; to qualify as a trademark, a mark must serve as a source identifier for a particular good or service. *See Experience Hendrix, LLC v. Zabell Ent., LLC*, 2017 WL 11646865, at *5 (C.D. Cal. Sept. 8, 2017). In other words, it needs to be "used in connection with a particular good or service" in a way that "identifies the manufacturer or seller." *Id.* Sony's trademark claims fail because Sony does not adequately allege that the Aloy character is used distinctly as a source identifier in commerce—*i.e.* to communicate to customers Sony's ownership and control over the *Horizon* franchise—rather than just as a depiction of the content of the games in which she appears.

Sony makes much of the fact that its *Horizon* franchise is popular, and that the Aloy character appears in various contexts. But of course Aloy appears in connection with *Horizon* — she is a playable character in the game, and promotional materials for *Horizon* will naturally feature *Horizon*'s content. This does not make Aloy a source identifier for the game any more than any other features of the game, such as its "large robotic animals" or "post-apocalyptic world," both of which also appear in *Horizon* promotional materials. *See* Compl. ¶¶ 5–6, 122.

The claim that Aloy appears in many contexts is not enough, because Sony does not explain how Aloy appears *as a trademark*, i.e. selling a particular good or service. Sony points to *Horizon*'s sales, popularity, and critical acclaim, *id.* ¶ 118, but while *Horizon*'s success no doubt increases Aloy's visibility, it does not establish that Aloy is "perceived by the purchasing public *not just as a character* but also as a mark which identifies and distinguishes the source of the [game]." *In Re Stallard*, 2023 WL 5607600, at *2 (TTAB 2023). Similarly, while the Complaint observes that "Aloy's silhouette and visage have appeared" in various *Horizon* settings, Sony does not identify the examples for which Aloy has appeared as a representative of the game, rather than

as a playable character within it.  Sony also does not identify which of its examples are instances of *Sony* intentionally using the character as a trademark, rather than fans or other parties using the Aloy character simply due to her popularity.  For example, the Complaint points to Aloy's appearance on merchandise and various social media platforms, Compl. ¶ 114, but does not say who is selling the merchandise or whether the social media appearances stem from Sony or from fans.  More fundamentally, Sony does not explain how Aloy functions as a trademark in any of these contexts, *i.e.*, what particular product or service she is meant to identify in each context.[10]

Sony's examples of Aloy's appearance also fail to establish her as a trademark because they lack crucial details like the "specific geographic market" in which Sony has achieved "sufficient market penetration."  *Re-Mktg. Grp., Inc. v. Miller*, 2021 WL 6103546, at *16 (C.D. Cal. Nov. 9, 2021) (internal quotation marks omitted).  Sony alleges that Aloy has appeared on merchandise, statues, and apparel, but does not say when or where, including whether such appearances were in California or even in the United States.  Failure to "sufficiently allege which specific geographical area [the plaintiff] asserts its common law rights to the use of the unregistered [trademark]" is grounds for dismissal.  *Mike's Novelties, Inc. v. PIV Enters., Inc.*, 2024 WL 457120, at *10 (E.D. Cal. Feb. 6, 2024), *report and recommendation adopted*, 2024 WL 1077340 (E.D. Cal. Mar. 12, 2024).

## III.    SONY'S CLAIMS ARE NOT RIPE FOR ADJUDICATION

The gravamen of Sony's complaint is that the Defendants have purportedly "continued to produce a game that makes unauthorized use of" *Horizon* intellectual property.  Compl. ¶ 78.  The first paragraph of Sony's Complaint boldly proclaims that Sony's purpose in bringing this lawsuit is "to prevent the imminent release of *Light of Motiram*."  *Id.* ¶ 1.  But as Sony concedes, the planned release date for this game is *two years away*, currently set for Q4, 2027.  *See* Hurst Decl. (Dkt. 61-1) ¶ 3; *see also id.* Ex. 29 (Dkt. 61-29).  To the extent Sony suggests the Court cannot

---

[10] Rather than images from its Complaint, Sony points to images in an exhibit to the Served Defendants' Motion to Dismiss.  Opp. at 23–24.  Leaving aside that Sony's Complaint must stand on its own, *see, e.g*, *Van Buskirk v. CNN Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."), these examples also do not cure the defects raised here—*i.e.*, that Aloy appearances as a video game character do not represent her functioning as an identifier of the source of a product or service.

consider that post-lawsuit change because the Motion mounts a facial challenge to subject matter jurisdiction, *see* Opp. at 9,[11] the future release date was even *less* certain at the time the Complaint was filed.  Indeed, prior to the filing of Sony's lawsuit, there was no imminent or impending release date for the *Light of Motrium* game at all.  *See* Compl. at ¶ 121 (screenshot of then-current Steam page listing the release date as "To be announced"); *see also id.* n.1 (citing to archived Steam page from December 1, 2024 showing "Release Date: To be announced"); *id.* n.36 (citing to archived Steam page from November 28, 2024 showing "Planned Release Date: To be announced").  Based on the Complaint alone, the game's release status remained "To Be Announced" from November 2024 to July 2025—a period of **nine months**, or the better part of a year.

At bottom, the core of Sony's lawsuit is that an unreleased video game with a planned release date that is currently two years away will infringe its copyrights and trademark.  That claim, based on future conduct that has not—and may never—occur, renders at least that portion of Sony's lawsuit unripe for adjudication.  *See Texas v. United States*, 523 U.S. 296, 300 (1998) (a case is unripe if it is "contingent future events that may not occur as anticipated, or indeed may not occur at all"); *see also Kelly v. Univ. Press of Mississippi*, 2016 WL 4445986, at *4 (C.D. Cal. Aug. 16, 2016) (dismissing copyright claim based on "forthcoming" book because "no copyright infringement ha[d] yet occurred"); *see also LegalForce RAPC Worldwide, P.C v. LegalForce, Inc*., 2023 WL 6930330, at *6–8 (N.D. Cal. Oct. 19, 2023) (dismissing trademark infringement claims because the accused product had not yet launched and was not yet for sale).[12]

## CONCLUSION

For the foregoing reasons and those stated in the Served Defendants' Motion to Dismiss (Dkt. 48), Sony's claims against the Served Defendants should be dismissed.

---

[11] The Served Defendants contest this position.  Sony ignores that the Complaint repeatedly references this Steam page and incorporates it.  *See* Dkt. 49, at 3; *see also* Compl. ¶ 7 (discussing content on Steam page), ¶ 10 (same), ¶33 (same), ¶¶ 72–73 (same), ¶ 76 (same), ¶ 86 (same), ¶121 (same), n. 1 (discussing content on and citing to the Steam page), n.2 (citing to the Steam page), n. 36 (citing to Steam page and archived version of Steam page).

[12] Sony's cited cases do not support its position or are distinguishable.  *See Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) (acknowledging there must be "an "*impending* injury" (emphasis added)); *Paramount Pictures Corp. v. Axanar Prods., Inc.*, 2016 WL 2967959, *1–2 (C.D. Cal. May 9, 2016) (film was already being distributed on YouTube); *Warner Bros. Ent. v. Glob. Asylum, Inc.*, 2013 WL 12114836, at *1 (C.D. Cal. Jan. 29, 2013) (TRO granted one day before scheduled film release).

1    Dated: October 29, 2025                    Respectfully submitted,

2                                               LATHAM & WATKINS LLP

3                                               By /s/ *Sarang V. Damle*
                                                Sarang V. Damle (admitted *pro hac vice*)
4                                                 sy.damle@lw.com
                                                Sara E. Sampoli (Bar No. 344505)
5                                                 sara.sampoli@lw.com
                                                555 Eleventh Street, NW, Suite 1000
6                                               Washington, D.C. 20004-1304
                                                Telephone: +1.202.637.2200
7
                                                Andrew M. Gass (Bar No. 259694)
8                                                 andrew.gass@lw.com
                                                Ivana Dukanovic (Bar No. 312937)
9                                                 ivana.dukanovic@lw.com
                                                505 Montgomery Street, Suite 2000
10                                              San Francisco, CA 94111-6538
                                                Telephone: +1.415.391.0600
11
                                                Allison L. Stillman (admitted *pro hac vice*)
12                                                alli.stillman@lw.com
                                                1271 Avenue of the Americas
13                                              New York, NY 10020
                                                Telephone: +1.212.906.1200
14
                                                *Attorneys for Defendants Tencent America,*
15                                              *LLC, Proxima Beta U.S. LLC, and Tencent*
                                                *Holdings Ltd.*
16

17

18

19

20

21

22

23

24

25

26

27

28